[Cite as *State v. Castile*, 2014-Ohio-1918.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | **No. 13AP-10** |
| v. | : | (C.P.C. No. 11CR-07-3857) |
| Isaac J. Castile, III, | : | **(REGULAR CALENDAR)** |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on May 6, 2014

*Ron O'Brien*, Prosecuting Attorney, and *Michael P. Walton*, for appellee.

*Sam B. Weiner*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendant-appellant, Isaac J. Castile, III, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas. For the following reasons, we reverse that judgment and remand the matter for resentencing.

**I. Factual and Procedural Background**

{¶ 2} On July 21, 2011, a Franklin County Grand Jury indicted appellant with three counts of securities fraud, in violation of R.C. 1707.44(G), three counts of false representations in the sale of securities, in violation of R.C. 1707.44(B)(4), three counts of the sale of unregistered securities, in violation of R.C. 1707.44(C)(1), and three counts of theft, in violation of R.C. 2913.02. The charges arose out of different transactions in which appellant accepted money from three Ohio citizens: John Prater, Jennette Stevens,

and Raymond Smith pursuant to offerings from the Metropolitan Enhancement Treasure-Backed Investements, Ltd. ("METBI"). Appellant was one of the managers of METBI. Appellant entered a not guilty plea to the charges and proceeded to a jury trial.

{¶ 3} At trial, Harvey McCleskey, Enforcement Attorney for the Ohio Division of Securities ("the division"), testified about his investigation of appellant. The division's investigation of appellant began in late 2006 or early 2007 after it received complaints from out-of-state investors. McCleskey learned of Prater, Stevens, and Smith during the investigation. Specifically, Stevens invested $6,000 with appellant in 2006 and received a 10 percent Convertible Subordinated Debenture from METBI, which is a security that entitled her to receive her principal plus interest at the end of the stated term. Prater initially invested $250,000 with appellant for a similar debenture in 2005 and rolled that investment over for another year in 2006. Smith invested $5,000 in another similar investment in 2008.

{¶ 4} A Private Placement Memorandum ("PPM") that went along with the debentures contained details about the investment. The PPM provided that 100 percent of the proceeds available after expenses of the offering would be used to purchase treasury bills which would then be used to acquire bank guarantees. Those guarantees would be swapped in a repurchase agreement for fixed rate commercial notes. The PPM also warned investors that the securities were speculative and involved a high degree of risk. McCleskey obtained bank records from appellant and METBI and looked for purchases of treasury bills in accordance with the PPM. McCleskey could not find any evidence that appellant purchased treasury bills with money he received from Prater, Stevens, and Smith. Upon his review of the financial records, McCleskey concluded that appellant was collecting money from investors and using that money to pay off other investors as well as his own personal expenses in what McCleskey termed a Ponzi scheme. (Tr. 113-14.)

{¶ 5} Each of the three victims testified about making what they thought were investments with appellant. Although Stevens did receive a small portion of her investment back, neither Prater nor Smith received any of their investments back.

{¶ 6} The jury found appellant guilty of all counts except one of the theft counts. The trial court sentenced appellant accordingly.

## II.  The Appeal

{¶ 7}  Appellant appeals and assigns the following errors:

[1.] When the trial court actively participates in plea negotiations before trial, the fair trial rights of the accused are violated, contra the Fourth, Fifth, Sixth, and Fourteenth Amendments to the Constitution and Article I, Section 10 of the Ohio Constitution.

[2.] (A) When the trial court responds to a jury question during deliberations, that emphasizes conviction, the accused is denied his fair trial and due process rights under the Sixth and Fourteenth Amendments to the Constitution.

(B) The trial court directed a verdict in favor of the prosecution when it gave an instruction in answering a jury question, contra the Fifth, Sixth, and Fourteenth Amendments to the Constitution.

[3.] (A) The trial court erred when it imposed consecutive sentences without making the required findings required by statute.

(B) The trial court erred when it failed to merge the two securities fraud counts that involved the same conduct and a single state of mind of the accused, contra the double jeopardy clause of the Fifth, and Fourteenth Amendments to the Constitution.

[4.] When the state, through the testimony of a primary witness, introduces prejudicial inadmissible evidence, said misconduct results in violation of the Fifth, Sixth, and Fourteenth Amendments to the Constitution of the accused.

[5.] When the record established judicial bias, from the pre-trial proceedings, during the course of the jury trial, and at the sentencing hearing, the result is a structural error contra the Fifth, Sixth, and Fourteenth Amendment rights of the accused.

{¶ 8}  For analytical clarity, we address the assignments of error out of order.

## III.  Appellant's First and Fifth Assignments of Error–Judicial Conduct

{¶ 9}  These assignments of error focus on the trial court's conduct in these proceedings.  Specifically, appellant claims that the trial court violated his fair trial rights

by actively involving himself with the plea negotiations before trial and because of his "established judicial bias." We reject both claims.

## A. Involvement in Plea Negotiations

{¶ 10} Appellant alleges that the trial court improperly participated in plea negotiations before his trial. We disagree.

{¶ 11} Appellant supports his argument with extensive reliance on the Supreme Court of Ohio's decision in *State v. Byrd*, 63 Ohio St.2d 288 (1980). Reliance on that case is misplaced, however, because the defendant in *Byrd* entered a guilty plea after active negotiations led by the trial court. The court held that:

> Although this court strongly discourages judge participation in plea negotiations, we do not hold that such participation per se renders a plea invalid under the Ohio and United States Constitutions. Such participation, however, due to the judge's position in the criminal justice system presents a great potential for coerced guilty pleas and can easily compromise the impartial position a trial judge should assume.
>
> As a consequence we hold that a trial judge's participation in the plea bargaining process must be carefully scrutinized to determine if the judge's intervention affected the voluntariness of the defendant's guilty plea. Ordinarily, if the judge's active conduct could lead a defendant to believe he cannot get a fair trial because the judge thinks that a trial is a futile exercise or that the judge would be biased against him at trial, the plea should be held to be involuntary and void under the Fifth Amendment and Section 10, Article I of the Ohio Constitution.

*Id.* at 293-94.

{¶ 12} *Byrd* and its progeny address the potentially coercive effect of a trial court's involvement in plea negotiations when determining the voluntariness of a guilty plea. *State v. Finroy*, 10th Dist. No. 09AP-795, 2010-Ohio-2067, ¶ 6. Here, appellant did not plead guilty but, instead, proceeded to trial. Thus, his argument that the trial court violated the principle of law discussed in *Byrd* is misplaced. *State v. Stadmire*, 8th Dist. No. 81188, 2003-Ohio-873, ¶ 16 (*Byrd* and similar cases inapplicable because defendant did not enter guilty plea but went to trial).

### B.  Judicial Bias

{¶ 13} Appellant also argues that the trial court was biased.   Under R.C. 2701.03(A), when a party believes that the trial judge is biased, the proper avenue for redress is filing an affidavit of disqualification. *See* Ohio Constitution, Article IV, Section 5(C). " 'An affidavit of disqualification must be filed as soon as possible after the incident giving rise to the claim of bias and prejudice occurred or affiant becomes aware of circumstances that support disqualification. A party may be considered to have waived its objection to the judge when the objection is not raised in a timely fashion and the facts underlying the objection have been known to the party for some time.' "  *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, ¶ 56, quoting *In re Disqualification of O'Grady*, 77 Ohio St.3d 1240, 1241 (1996).   Because appellant failed to file an affidavit of disqualification against the trial court judge, he forfeited his complaint on appeal.

{¶ 14} For all these reasons, we overrule appellant's first and fifth assignments of error.

## IV.  Appellant's Fourth Assignment of Error–Prosecutorial Misconduct

{¶ 15} Appellant argues that the state engaged in a pattern of calculated misconduct by soliciting the admission of inadmissible evidence throughout McCleskey's testimony.  We disagree.

{¶ 16} The standard of review for prosecutorial misconduct is whether the comments and questions by the prosecution were improper and, if so, whether they prejudiced appellant's substantial rights. *State v. Treesh*, 90 Ohio St.3d 460, 480 (2001). "The touchstone of analysis 'is the fairness of the trial, not the culpability of the prosecutor.' " *State v. Gapen,* 104 Ohio St.3d 358, 2004-Ohio-6548, ¶ 92, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  Prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived the appellant of a fair trial based on the entire record. *State v. Lott*, 51 Ohio St.3d 160, 166 (1990).

{¶ 17} Appellant first notes McCleskey's testimony regarding alleged out-of-state victims of appellant's conduct.   During the state's examination of McCleskey, the prosecutor asked him how appellant came to the attention of the division.  McCleskey commented that the division had received complaints from out-of-state investors.  (Tr. 43.)  The trial court overruled appellant's objection but instructed the witness to "stay in

the generality of why we're here." (Tr. 43.) During cross-examination, appellant's trial counsel asked McCleskey if he started the investigation into appellant's conduct as the result of a complaint filed by Prater. McCleskey replied again that he began the investigation in 2007 as a result of complaints from out-of-state investors. (Tr. 119.) Trial counsel then noted that McCleskey did not refer his investigation to the prosecutor's office until 2011. On re-direct, the prosecution asked McCleskey to explain the delay that occurred between the beginning of the investigation in 2007 and the referral in 2011. McCleskey explained that part of the delay occurred because of the out-of-state complaints. (Tr. 172.)

{¶ 18} Appellant also argues that the prosecutor improperly elicited McCleskey's testimony that appellant was arrested and briefly jailed during the investigation of this case as a result of appellant's failure to comply with a subpoena the division issued in 2007 and that appellant requested an attorney after the service of the subpoena. (Tr. 174-75.) This testimony was elicited by the prosecutor to explain the four-year delay between the beginning of the investigation in 2007 and the referral in 2011.

{¶ 19} In essence, appellant is claiming that McCleskey's responses to the prosecutor's questions were improper, not that the prosecutor's questions themselves were improper. This is not grounds for prosecutorial misconduct. The prosecutor's questions were not improper. The prosecutor simply asked McCleskey to explain why the division investigated appellant and why there was a delay in the investigation—a delay that appellant's own trial counsel brought to the jury's attention. The prosecutor did not seek to elicit any details about the out-of-state complaints, the subpoena, or appellant's arrest.

{¶ 20} Further, the trial court twice provided the jury with a limiting instruction regarding McCleskey's testimony. The instruction regarding the out-of-state complaints warned the jury to only consider them "as to why [McCleskey] did something. * * * They are not before you as an issue. You're not getting any evidence on those, so the mere fact that they have complainants in other states, you are not to take into consideration any other factor other than, of course, why [McCleskey] did something." (Tr. 173.) Then, after the testimony regarding appellant's arrest, the trial court instructed the jury "to disregard testimony about the warrant and what happened in the civil proceeding. It has nothing to do with the factual issues in this case. You are directed to disregard it. * * * [T]he fact that

State Highway Patrol arrested him has nothing to do with this, had nothing to do with your indictment and they are to disregard that fact." (Tr. 175-76.) Such a limiting instruction reduces the risk of prejudice as the result of any alleged prosecutorial misconduct. *See Columbus v. Aleshire*, 187 Ohio App.3d 660, 2010-Ohio-2773, ¶ 46-47 (10th Dist.) (rejecting claim of prosecutorial misconduct, in part because limiting instruction would have cured any prejudicial affect of alleged improper comment); *see also State v. Wells*, 5th Dist. No. 2001CA00249 (Feb. 25, 2002).

{¶ 21} Having found no prosecutorial misconduct, we overrule appellant's fourth assignment of error.

## V. Appellant's Second Assignment of Error–The Trial Court's Answer to Jury Question

{¶ 22} Appellant argues in his second assignment of error that the trial court erred in its response to a jury question. We disagree.

{¶ 23} Generally, a trial court enjoys discretion to determine how to respond to a jury question. *State v. Carter*, 72 Ohio St.3d 545, 553 (1995). A reversal of a conviction based upon a trial court's response to such a request requires a showing that the trial court abused its discretion. *Id.*; *State v. Young*, 10th Dist. No. 04AP-797, 2005-Ohio-5489, ¶ 35. Although an abuse of discretion is typically defined as an unreasonable, arbitrary, or unconscionable decision, *State v. Beavers,* 10th Dist. No. 11AP-1064, 2012-Ohio-3654, ¶ 8, we note that no court has the authority, within its discretion, to commit an error of law. *State v. Akbari*, 10th Dist. No. 13AP-319, 2013-Ohio-5709, ¶ 7, citing *State v. Beechler,* 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶ 70.

{¶ 24} During its deliberations, the jury asked the trial court if "[appellant had] a duty to disclose he was under investigation?" (Tr. 405.) The trial court provided the following answer to the question: "If you find that he knew he was under investigation at the time of the sale then you can consider: If it is a material factor in the investor determination to purchase, please see the definition of 'material.' See page 7 of the instruction." (Tr. 414.) Appellant objected to the response, arguing that the issue of this nondisclosure was not alleged in his indictment and was never "part of the case." (Tr. 413.)

{¶ 25} Appellant argues that the trial court's response "essentially instructed them that he was guilty" and "in essence directed a verdict in favor of the prosecution." (Appellant's brief, at 28, 30.) While the rationale for appellant's argument is not clear to this court, it appears that appellant claims the trial court's response instructed the jury that being under investigation was a material factor. We disagree.

{¶ 26} We first reject appellant's claim that nondisclosures were never part of this case. Appellant faced counts of securities fraud in violation of R.C. 1707.44(G). Fraud in that context refers to both affirmative misrepresentations as well as nondisclosures where there is a duty to disclose. *State v. Warner*, 55 Ohio St.3d 31, 53-54 (1990). To address appellant's argument, the trial court's response did not instruct the jury that the investigation was a material factor. The response indicated that if the jury found that appellant knew he was under investigation, then the jury could consider whether that nondisclosure was material to the decision to purchase the investment. The response correctly allowed the jury, as the trier of fact, to determine whether appellant's failure to disclose that he was under investigation was material or not. Accordingly, the trial court did not abuse its discretion in its response to the jury's question and we overrule appellant's second assignment of error.

## VI. Appellant's Third Assignment of Error–Sentencing Issues

{¶ 27} Appellant takes issue with two aspects of his sentencing. First, he argues that the trial court failed to make the required findings in order to sentence him to consecutive sentences pursuant to R.C. 2929.14(C)(4). Upon a review of the sentencing hearing, we agree. Nevertheless, the state argues that the trial court did not need to make those findings because appellant committed his offenses before the effective date of the reenactment of that statute in 2011 and that a failure to make the findings is not plain error. This court has previously rejected both of the state's arguments. *State v. Simms*, 10th Dist. No. 13AP-299, 2013-Ohio-5142, ¶ 10. Therefore, we sustain this portion of appellant's third assignment of error.

{¶ 28} Second, he argues that the trial court erred by not merging two of his convictions for securities fraud for purposes of sentencing. We disagree.

{¶ 29} At sentencing, appellant did not request the merger of these two offenses and therefore has forfeited this argument on appeal absent plain error. *State v.*

*McClurkin*, 10th Dist. No. 11AP-944, 2013-Ohio-1140, ¶ 51; *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, ¶ 127. A trial court commits plain error, however, when it imposes multiple sentences for allied offenses of similar import which should have been merged. *State v. Gibson*, 10th Dist. No. 10AP-1047, 2011-Ohio-5614, ¶ 47, citing *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 31.

{¶ 30} R.C. 2941.25, Ohio's multiple count statute, provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 31} To determine whether offenses are allied and of similar import and therefore subject to merger, "the question is whether it is possible to commit one offense and commit the other with the same conduct, not whether it is possible to commit one without committing the other. * * * If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import." *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, ¶ 48, citing *State v. Blankenship,* 38 Ohio St.3d 116, 119 (1988); *Gibson* at ¶ 48-49.

{¶ 32} If the offenses can be committed by the same conduct, then "the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.' " *Johnson* at ¶ 49, quoting *State v. Brown,* 119 Ohio St.3d 447, 2008-Ohio-4569, ¶ 50. If the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge. *Johnson* at ¶ 51. However, if the answer to both questions is in the affirmative, then the offenses are allied offenses of similar import and will be merged. *State v. Taylor*, 10th Dist. No. 10AP-939, 2011-Ohio-3162, ¶ 38; *Johnson* at ¶ 50.

{¶ 33} Appellant argues that the two convictions for securities fraud involving Prater's investment of $250,000 should have merged because the same $250,000 investment was the basis for each conviction. The state argues that the two convictions were based on separate conduct and done with separate animus. We agree. Count one alleges that the fraud took place on or about July 26, 2005, when Prater initially invested the money with appellant. That investment matured on July 26, 2006. Count two alleges that the fraud took place on or about July 26, 2006, when Prater rolled over his initial investment for another year. The fraud appellant committed in these two counts, be it either affirmative misrepresentations or nondisclosures, were separate and occurred on different dates. *State v. Copeland*, 12th Dist. No. CA2003-12-320, 2006-Ohio-5899, ¶ 95 (separate misrepresentations in violation of R.C. 1701.44(B)(4) made to investors do not merge for purposes of sentencing). Thus, the two offenses, committed a year apart from each other, were not committed by the same conduct and do not meet the first test for merger under *Johnson*. Accordingly, we reject appellant's claim of merger.

{¶ 34} Because the trial court failed to make the required findings to impose consecutive sentences under R.C. 2929.14(C)(4), we sustain that portion of appellant's third assignment of error. We overrule the remaining portions of the third assignment of error.

## VII. Conclusion

{¶ 35} In conclusion, we sustain in part and overrule in part appellant's third assignment of error. We overrule appellant's remaining assignments of error. This case is reversed and remanded to the Franklin County Court of Common Pleas for resentencing.

*Judgment reversed;*
*case remanded for resentencing.*

BROWN and CONNOR, JJ., concur.