[Cite as *State v. Jones*, 2017-Ohio-1168.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                  :

    Plaintiff-Appellee,                    :

                                      No. 15AP-670

v.                                              :         (C.P.C. No. 14CR-4988)

Kyle L. Jones,                                 :         (REGULAR CALENDAR)

    Defendant-Appellant.                   :

---

D E C I S I O N

Rendered on March 30, 2017

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Laura R. Swisher*, for appellee. **Argued:** *Laura R. Swisher*.

**On brief:** *Timothy Young*, Ohio Public Defender, and *Eric M. Hedrick*, for appellant. **Argued:** *Eric M. Hedrick*.

---

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, Kyle L. Jones, appeals from an amended judgment entry of the Franklin County Court of Common Pleas sentencing him to 14 years imprisonment pursuant to jury verdicts of guilty on two counts of rape and one count of kidnapping, and from a judgment entry denying his motion for a new trial. For the reasons that follow, we affirm.

## I. Facts and Procedural History

{¶ 2} Appellant was indicted on six counts of rape, in violation of R.C. 2907.02, alleging that on or about September 1, 2014, he engaged in sexual conduct with the victim, B.D., and purposely compelled her to submit by force or threat of force. Each of the six counts asserted a different type of sexual conduct: vaginal intercourse, anal intercourse, digital vaginal penetration, digital anal penetration, cunnilingus, and fellatio. Appellant

was also indicted on one count of kidnapping, in violation of R.C. 2905.01, alleging that by force, threat, or deception appellant removed B.D. from the place where she was found or restrained her liberty for the purpose of engaging in sexual activity with her against her will.

{¶ 3} The charges were tried before a jury in the Franklin County Court of Common Pleas. At trial, B.D. testified that she had been acquainted with appellant approximately ten years and they had become friends. She stated that she contacted appellant a few days prior to September 1, 2014 because someone had tried to break into her house and she thought appellant might be able to help her get a gun. She stated she went with appellant to several different locations but appellant did not obtain a gun for her. B.D. testified that she then went back to the home of a friend where she was staying. She subsequently received a text message from appellant in the early morning hours of September 1, 2014, instructing her to come over. B.D. stated she picked appellant up in her car and that he again took her to several different locations. They ultimately arrived at the apartment of a man B.D. did not previously know, who was referred to as "Red." B.D. testified that she, appellant, and Red went to the basement of Red's apartment together, and then appellant and Red went back upstairs. B.D. testified that she was in the basement alone for a time. When B.D. was in the basement, she asked to go to the bathroom and discovered that the basement door was locked from the outside. She was not allowed to go to the bathroom. B.D. testified that appellant returned to the basement and was snorting lines of something B.D. presumed was cocaine. B.D. stated that she got up to leave, but appellant blocked the stairway and threatened to hit her in the head with a vase. B.D. stated appellant then tried to laugh off the comment. B.D. testified that by this point she had been in the basement for a couple of hours.

{¶ 4} B.D. told appellant that her phone was dead. In response, she was provided with a charger and began to charge her phone. While waiting, appellant encouraged B.D. to snort some of the substance he had. B.D. complied and began vomiting violently. Appellant then brought B.D. some water. B.D. testified that after she drank the water she began to feel like she could not move. She asked appellant what he had given her and appellant responded that he had given her a "Molly." (Tr. Vol. I at 57.) He then stated that it was like Ecstasy and contained Percocet and cocaine. Once B.D. felt that she could

move and her phone was charged, she again tried to leave. B.D. testified that when she reached for her phone, appellant knocked it out of her hand and punched her twice on the side of the head. B.D. testified that she was knocked unconscious by the blows. When she awoke, B.D. was partially on a cot, with her clothes removed. She was bleeding from a cut above her eye. B.D. testified that appellant was behind her, attempting to penetrate her anus with his penis. B.D. testified that she did not know if appellant had placed his penis in her mouth or vagina, but that she felt burning and pain in her vagina.

{¶ 5} B.D. screamed for help and Red opened the basement door and asked if everything was okay. When B.D. responded no, Red came into the basement and asked what was going on. Red tried to help B.D. get cleaned up, taking her to the bathroom and attempting to stop the bleeding from the cut above her eye. Red then made B.D. and appellant leave. B.D. testified that she let appellant get in her car and drove away, but then made him get out of the car a few blocks later. She stated appellant apologized but he did not specifically state why he was apologizing. B.D. testified that she drove to her daughter's home in Logan, Ohio, and then went to the hospital where police were called. On cross-examination, B.D. admitted that the written statement she made at the hospital did not refer to the basement door being locked.

{¶ 6} James Gwynn, Jr., testified that he was known as "Red," and that on the morning of September 1, 2014, appellant and a woman he had never met before arrived at his apartment. Gwynn stated that appellant asked if they could come in and relax for a while; Gwynn agreed, and allowed appellant and the woman to go down to the basement. Gwynn testified that he went upstairs to his room while appellant and the woman went to the basement. He later heard something and went to the basement door to ask if everything was okay. The woman responded that it was not and told Gwynn to come into the basement. Gwynn testified that when he went to the basement the woman was fully dressed and bleeding from a cut on her face. Gwynn took the woman to the bathroom to clean up. He stated that appellant was begging and pleading for the woman's forgiveness. Gwynn testified that the basement door was not locked and did not have a lock on it. He stated that there were drops of blood in the basement, but that he did not see any vomit. Gwynn testified that appellant and the woman were in the basement for no more than

three hours.  Gwynn stated that appellant asked the woman to give him a ride home; she agreed and they left together.

{¶ 7}  The sexual assault nurse examiner who examined B.D. at the hospital testified that B.D. had an abrasion above her right eye and dried blood on her face, chest, and shirt.  The nurse examiner further testified B.D. stated that appellant penetrated her vagina with his fingers and penis and her anus with his fingers and penis.  B.D. also reported to the nurse that she had oral contact with appellant's genitals and that appellant made oral contact with her genitals.  She indicated that her examination identified redness around B.D.'s anus and discharge in her vagina.  The nurse examiner further testified that B.D.'s toxicology screen later came back positive for cocaine and Benzodiazepine.  A forensic scientist from the Ohio Bureau of Criminal Investigation testified that seminal fluid was identified on the vaginal and anal samples taken from B.D. by the sexual assault nurse examiner.  Another forensic scientist from the Ohio Bureau of Criminal Investigation testified that she performed DNA testing on the vaginal and anal samples.  The anal sample did not provide enough DNA to perform a comparison; however, on the vaginal sample there was a complete DNA profile consistent with a sample taken from appellant.

{¶ 8}  Detective David Bobbitt of the Columbus Division of Police sexual assault unit testified he was the lead detective on the investigation of the rape of B.D.  Detective Bobbitt testified that he interviewed B.D. approximately four days after the rape occurred. He observed that B.D. had a fresh abrasion over her eye that was healing. B.D. told Detective Bobbitt that she knew her assailant by the street name "Bird," but subsequently learned that his name was Kyle Jones.  Based on that information and B.D.'s physical description of her assailant, Detective Bobbitt prepared a photo lineup that included appellant's photograph.  Detective Jason Sprague of the Columbus Division of Police sexual assault unit administered the photo lineup and testified that B.D. identified a photograph of appellant as the man who raped and assaulted her.  Detective Bobbitt testified that B.D. gave a comprehensive interview describing the incident.  On cross-examination, Detective Bobbitt testified he did not recall B.D. telling him that she was locked in the basement or that she lost consciousness during the encounter.  Detective

Bobbitt further testified that he and Detective Sprague went to the address B.D. provided, where they interviewed the occupant, Gwynn, took photographs, and collected evidence.

{¶ 9} Detective Bobbitt testified that he interviewed appellant following his arrest and a redacted video of that interview was played for the jury. During the interview, appellant initially denied knowing B.D., but later clarified that he did not know her by name. Appellant stated he had known B.D. for quite a while and that she had purchased crack cocaine from him. Appellant claimed that he met up with B.D. on September 1, 2014 at the Fountain Park Apartments, and they then went to the apartment of an acquaintance at Riverdale Square. Appellant asserted he did not know the name of the acquaintance, but that he was an African-American man with red hair. Appellant claimed that he and B.D. went to the basement of the apartment together, where B.D. smoked crack. He stated that B.D. wanted more crack but said she did not have any money and offered to have sex with him. Appellant said that they had sex and then B.D. smoked more crack. Appellant asserted that B.D. then asked for more crack but he did not have any. They then left the apartment together and B.D. gave him a ride. Appellant claimed that the red-haired man never came down to the basement. When asked about the sexual activity, appellant asserted that he and B.D. engaged in simulated sex, but did not remove their clothes and that there was no penetration. He stated that B.D. then performed oral sex on him. During the interview with Detective Bobbitt, appellant adamantly denied punching B.D. in the face.

{¶ 10} Plaintiff-appellee, State of Ohio, then presented its evidence and witnesses. Thereafter, appellant's trial counsel sought to call Amanda Barber as a witness. However, Barber did not appear to testify at trial. When questioned by the trial court, appellant's trial counsel asserted that he had sent a subpoena to Barber by mail and that she had acknowledged receipt of the subpoena during a telephone call. Outside the presence of the jury, appellant's trial counsel explained Barber's likely testimony:

> THE COURT: What would her testimony be, to the best of your knowledge?
>
> [Appellant's Trial Counsel]: I was looking at her interview summary. I am not talking about the earlier incident where she states that [B.D.] came to try to sell her pills and called them Percocets for crack, but obviously that didn't work.

And then on the day this occurred, she said she had seen her about 2:00 p.m. She saw [Barber] pulling in front of the apartments [sic] -- or she was pulling in front of the apartments. She saw [B.D.] in the parking lot.

She was waiting for $40 worth of crack. She was saying she had a cut above her eye and was telling her that she was robbed, and they took her purse and cellphone at the Fountain Park Apartments. She saw the scratch on the eye, and that's about it.

THE COURT: So her testimony would be that [B.D.] told her that she was robbed and hit where?

[Appellant's Trial Counsel]: At the Fountain Park Apartments.

THE COURT: All right.

[Appellant's Trial Counsel]: That's it. That's what she would be testifying to.

(Tr. Vol. II at 309-10.) Following additional discussion with appellant's trial counsel and the prosecutor, the trial court concluded that Barber's testimony would not have been admissible and declined to grant a continuance. Appellant did not testify in his own defense and did not present any other witnesses or evidence.

{¶ 11} Following closing arguments, the trial court issued instructions to the jury. The instructions included an explanation of the definitions of sexual conduct, purposeful conduct, and force for purposes of the rape charges. During deliberations, the jury submitted a question regarding sexual consent while under the influence. After conferring with counsel for appellant and the state, the trial court provided the following response to the jury:

A person does not and cannot consent to have sex with another if the person's ability to consent is substantially impaired because of a physical condition or intoxicant.

However, the offender, alleged offender, the defendant has to know or have reasonable cause to believe that the person's ability to consent was substantially impaired because of the physical condition or intoxicant.

A person is aware of or knows or has reasonable cause to believe when they're aware that circumstances probably exist.

> However, I caution you, the State of Ohio still must prove force and threat of force and all the elements of the offenses of rape as I previously defined in your instructions. They still have to prove all the elements. That's the law regarding consent.

(Tr. Vol. II at 389.) The jury then continued its deliberations and ultimately returned verdicts of guilty on the first two counts of the indictment, rape by vaginal intercourse and rape by anal intercourse, and the seventh count of the indictment, kidnapping. The jury found appellant not guilty of the remaining charges.

{¶ 12} The trial court sentenced appellant to 7 years imprisonment on each of the rape convictions, to be served consecutive to each other, and 7 years imprisonment on the kidnapping conviction, to be served concurrent with the rape convictions, for a total sentence of 14 years imprisonment. The trial court notified appellant that he would be classified as a Tier III sexual offender and that he was subject to a 5-year postrelease control period. The court granted appellant 225 days of jail-time credit.

{¶ 13} Appellant filed a motion for new trial, pursuant to Crim.R. 33, asserting that the trial court abused its discretion by refusing to continue the trial until Barber could be secured to appear to testify. The motion also asserted the trial court abused its discretion by providing the jury with the law regarding intoxication and sexual consent when appellant was charged with forcible rape. The trial court denied appellant's motion for new trial finding that appellant failed to establish that Barber had been properly subpoenaed and that her testimony likely would not have resulted in a different outcome. The court also concluded that its response to the jury's question was a proper statement of law and did not mislead the jury.

## II. Assignments of Error

{¶ 14} Appellant appeals from the sentencing entry and the entry denying his motion for new trial, assigning the following four errors for our review:

> I. The trial court erred and denied Mr. Jones a fair trial and due process of law when it misled the jury by instructing on the unindicted offense of rape via sex with a substantially impaired person under R.C. 2907.02(A)(1)(c).
>
> II. The trial court erred by de facto amending the indictment charging forcible rape under R.C. 2907.02(A)(2), during jury deliberation, to substantial impairment rape under R.C.

2907.02(A)(1)(c), in violation of Criminal Rule 7(D), Article I, Section 10 of the Ohio Constitution, Mr. Jones's right to due process, and his rights under the Double Jeopardy Clauses.

III. Trial counsel rendered ineffective assistance in violation of Mr. Jones's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution.

IV. The trial court erred in violation of Mr. Jones's rights under the Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution, Article I, Section 10 of the Ohio Constitution, and R.C. 2941.25, when it failed to merge for sentencing offenses that had a similar import, arose from the same conduct, and were not committed separately or with a separate animus.

## III.  Discussion

### A. Standard of Review

{¶ 15}  Appellant filed his motion for new trial, pursuant to Crim.R. 33(A)(1), which provides that a new trial may be granted based on "[i]rregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial."  We review a trial court's decision on a motion for new trial under Crim.R. 33 for abuse of discretion. *State v. Westerfield*, 10th Dist. No. 16AP-85, 2016-Ohio-4633, ¶ 8.  An abuse of discretion occurs when a court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

### B. Response to Jury Question

{¶ 16}  Appellant asserts in his first assignment of error that the trial court erred in its response to the question from the jury regarding sexual consent and intoxication.  R.C. 2907.02(A)(1)(a) prohibits sexual conduct when, "[f]or the purpose of preventing resistance, the offender substantially impairs the other person's judgment or control by administering any drug, intoxicant, or controlled substance to the other person surreptitiously or by force, threat of force, or deception."  R.C. 2907.02(A)(2) prohibits sexual conduct "when the offender purposely compels the other person to submit by force or threat of force."  Appellant was charged with six counts of rape, in violation of R.C. 2907.02(A)(2), alleging that he compelled B.D. to submit to various types of sexual

conduct by force or threat of force. Appellant argues that the trial court's response to the jury's question about the ability to consent to sex while under the influence impermissibly blended the legal standard for forcible rape under R.C. 2907.02(A)(2) with the standard for rape of a substantially impaired person under R.C. 2907.02(A)(1)(a), and effectively allowed the jury to find appellant guilty of rape in violation of R.C. 2907.02(A)(1)(a), despite the fact that he was not charged with that offense under the indictment.

{¶ 17} "Where, during the course of its deliberations, a jury requests further instruction, or clarification of instructions previously given, a trial court has discretion to determine its response to that request." *State v. Carter*, 72 Ohio St.3d 545 (1995), paragraph one of the syllabus. *See also State v. Preston-Glenn*, 10th Dist. No. 09AP-92, 2009-Ohio-6771, ¶ 28 ("It is within the sound discretion of the trial court to provide supplemental instructions in response to a question from the jury."). The trial court's response to a jury's question, when viewed in its entirety, must be a correct statement of law and be consistent with or supplement the instructions previously given to the jury. *Id.* at ¶ 28. Reversal of a conviction based on a trial court's response to a jury's question requires showing an abuse of discretion. *Id.*

{¶ 18} In *State v. Castile*, 10th Dist. No. 13AP-10, 2014-Ohio-1918, this court considered a defendant's claim that a trial court's response to a jury's question effectively allowed the jury to convict him of an unindicted offense. Castile was charged with securities fraud, under a statute that penalized both affirmative misrepresentations and non-disclosures where there was a duty to disclose. *Id.* at ¶ 26. During deliberations, the jury submitted a question to the trial court asking whether Castile had a duty to disclose to investors that he was under investigation at the time of an investment sale. *Id.* at ¶ 24. The trial court responded that if the jury found Castile knew he was under investigation at the time of the sale it could consider whether that was a material factor in the investors' determination to purchase the investment and referred the jury to the definition of the term "material" provided in the jury instructions. *Id.* Castile objected to the court's response to the jury's question, arguing that this non-disclosure was not alleged in the indictment. *Id.* On appeal, Castile argued that the trial court's response to the jury's question effectively instructed the jury that he was guilty. *Id.* at ¶ 25. This court disagreed, noting that the trial court did not instruct the jury that the investigation was a

material factor. Rather, the trial court's response allowed the jury to determine whether Castile knew he was under investigation at the time of the investment sale and, if so, whether his failure to disclose that information was material to the investors' decision. Therefore, the court concluded, the trial court's response to the jury's question was not an abuse of discretion. *Id.* at ¶ 26.

{¶ 19} The trial court's jury instructions in the present case stated that for each rape charge, a guilty verdict required finding beyond a reasonable doubt that appellant purposely compelled B.D. to submit to each type of sexual conduct by force or threat of force. After deliberating for a time, the jury submitted a question regarding sexual consent while under the influence. The trial court conferred with counsel for appellant and the state regarding the appropriate response. Ultimately, the trial court gave the following response to the jury:

> A person does not and cannot consent to have sex with another if the person's ability to consent is substantially impaired because of a physical condition or intoxicant.
>
> However, the offender, alleged offender, the defendant has to know or have reasonable cause to believe that the person's ability to consent was substantially impaired because of the physical condition or intoxicant.
>
> A person is aware of or knows or has reasonable cause to believe when they're aware that circumstances probably exist. However, I caution you, the State of Ohio still must prove force and threat of force and all the elements of the offenses of rape as I previously defined in your instructions. They still have to prove all the elements. That's the law regarding consent.

(Tr. Vol. II at 389.)

{¶ 20} Although appellant was not charged with rape in violation of R.C. 2907.02(A)(1)(a), the trial court's explanation of the law with respect to consent and intoxication was a correct statement of law. *See, e.g., Ohio Jury Instructions*, CR Section 507.02(A)(1) (Rev. Jan. 22, 2011). Moreover, in addition to providing this accurate statement of law with respect to consent, the trial court reiterated the jury was required to find appellant used force or the threat of force in compelling B.D. to submit to sexual conduct. The trial court specifically drew the jury's attention to the elements of the

offenses given in the jury instructions at the close of trial. In light of this admonition, we find the trial court's response to the jury's question as consistent with the instructions previously given. *See Preston-Glenn* at ¶ 28. Similar to *Castile*, the trial court did not abuse its discretion because its response answered the jury's question with an accurate statement of law while also reiterating the appropriate legal standard to be considered by the jury.

{¶ 21} Accordingly, we overrule appellant's first assignment of error.

{¶ 22} In his second assignment of error, appellant asserts the trial court's response to the jury's question effectively amended the indictment to charge appellant with rape of a substantially impaired person in violation of R.C. 2907.02(A)(1)(a). Appellant claims that this violated Crim.R. 7(D), which provides, in relevant part, that "[t]he court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged." As explained above, however, we conclude that the trial court's response to the jury's question did not have the effect of permitting the jury to convict appellant of rape in violation of R.C. 2907.02(A)(1)(a). Although the court's response addressed the law regarding consent and intoxication, it also reiterated the requirement that the jury find appellant used force or the threat of force. Thus, the trial court's response did not have the effect of amending the indictment to charge appellant with rape in violation of R.C. 2907.02(A)(1)(a).

{¶ 23} Accordingly, we overrule appellant's second assignment of error.

## C. Ineffective Assistance of Counsel

{¶ 24} Appellant asserts in his third assignment of error that his trial counsel provided ineffective assistance by failing to subpoena Barber, whom appellant asserts would have provided testimony important to his defense. Appellant's trial counsel requested a continuance of trial when Barber failed to appear to testify, but appellant argues that his counsel was ineffective because he failed to properly explain Barber's likely testimony to the trial court when requesting the continuance.

{¶ 25} Courts apply a two-part test to evaluate claims of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Bradley*, 42 Ohio

St.3d 136, 141-42 (1989). "First, the defendant must show that counsel's performance was deficient." "Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland* at 687. "Judicial scrutiny of counsel's performance must be highly deferential [and] [b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *Bradley* at 141.

{¶ 26} Generally, counsel's decision whether to call a particular witness falls within the purview of trial strategy, and a reviewing court will not second guess that decision. *State v. Davis*, 10th Dist. No. 09AP-869, 2010-Ohio-4734, ¶ 18. "[T]he mere failure to subpoena witnesses is not itself a substantial violation of an essential duty without a showing that their testimony would have assisted the defense." *See also State v. Dennis*, 10th Dist. No. 04AP-595, 2005-Ohio-1530, ¶ 24 ("Further, the mere failure to subpoena witnesses does not render counsel's assistance ineffective absent a showing of prejudice.").

{¶ 27} The record reflects that a subpoena was issued to Barber by regular mail. As appellant notes, Crim.R. 17(D) does not expressly authorize service of a subpoena on a witness in a criminal case by regular mail. *See* Crim.R. 17(D) ("Service of a subpoena on a person named therein shall be made by delivering a copy thereof to such person or by reading it to him in person or by leaving it at his usual place of residence, and by tendering to him upon demand the fees for one day's attendance and the mileage allowed by law."). *But see State v. Castle*, 92 Ohio App.3d 732, 734 (9th Dist.1994) (concluding for purposes of R.C. 2705.02(C), which authorizes punishment for contempt for failure to obey a duly served subpoena, that a subpoena for a witness in a criminal case was duly served when it was sent by regular mail to the witness's usual place of residence and the witness had actual knowledge of the subpoena and the potential consequences of failing to obey). When Barber did not appear, appellant's trial counsel asserted to the court that Barber had confirmed receipt of the subpoena during a telephone call. It appears that appellant's trial counsel attempted to secure Barber's testimony but failed to ensure that she was present at trial. Therefore, this does not appear to be a case where appellant's trial counsel made a strategic decision not to present Barber's testimony.

{¶ 28} Appellant's trial counsel advised the court that Barber would have testified to seeing B.D. in an apartment parking lot on the afternoon following the rape, where B.D. was waiting to obtain crack cocaine. Appellant's trial counsel further indicated that Barber would have testified that B.D. had a cut above her eye, that B.D. told Barber she was injured in a robbery, and that the robbers took her purse and cell phone. On appeal, appellant argues his trial counsel failed to explain the crux of Barber's likely testimony—that while in the parking lot she witnessed B.D. receive crack cocaine from appellant on the afternoon after the rape occurred. Appellant argues that his trial counsel's failure to explain this detail was objectively unreasonable and resulted in the trial court denying a continuance.

{¶ 29} The state asserts that even if appellant's trial counsel was deficient in failing to secure Barber's appearance at trial, appellant was not prejudiced because Barber's testimony would have been inadmissible. Appellant supported his motion for new trial with an affidavit from Barber. In that affidavit, Barber stated she saw B.D. in the parking lot of the Fountain Park Apartments on the afternoon after the rape occurred. Barber asked B.D. if appellant was with her all night during the prior night, and B.D. responded that he was not. Barber also attested B.D. told her she was at the apartment complex to get crack cocaine. Barber stated B.D. told her she had been robbed at the apartment complex and had been pushed against a wall and beaten. Barber asserted B.D. said her purse and cell phone had been taken in the robbery. Barber stated appellant brought crack to B.D. and then B.D. left. The state argues Barber's testimony would have been an attempt to impeach B.D.'s testimony through extrinsic evidence of inconsistent statements or conduct. Citing Evid.R. 613 and *State v. Wallace*, 10th Dist. No. 08AP-2, 2008-Ohio-5260, the state argues this evidence would have been inadmissible because appellant's trial counsel did not lay the foundation for impeachment of B.D. through extrinsic evidence by cross-examining her about interactions with Barber or receiving crack cocaine from appellant during the afternoon following the rape. In his reply brief, appellant argues that, to the extent Barber's testimony might have been excluded due to

trial counsel's failure to lay the proper foundation for impeachment of B.D. by extrinsic evidence, such failure by his trial counsel also constituted ineffective assistance.[1]

{¶ 30} Assuming for purposes of analysis that appellant's trial counsel performed deficiently, appellant must also show that he was prejudiced by his trial counsel's deficient performance. "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley*, at paragraph three of syllabus. If Barber had testified consistent with the statements in her affidavit, that testimony may have cast some doubt on B.D.'s testimony in the minds of jurors. However, in addition to B.D.'s testimony, there was testimony from Gwynn supporting portions of B.D.'s account, including the length of time she was in the basement with appellant and the fact that she was injured over her eye while in the basement with appellant. Moreover, the physical evidence of seminal fluid on the vaginal and anal samples taken from B.D. and a DNA profile consistent with appellant's DNA in the vaginal sample is consistent with B.D.'s testimony. That evidence also contradicts appellant's claim in the police interview that he and B.D. never removed their clothes and that no penetration occurred. Under these circumstances, we conclude that appellant has failed to establish a reasonable probability of a different result if Barber had been secured as a witness and her testimony had been admitted. Thus, appellant cannot demonstrate he was prejudiced by his trial counsel's alleged deficient performance.

{¶ 31} Accordingly, we overrule appellant's third assignment of error.

---

[1] Appellant raises the argument that his trial counsel was ineffective for failing to lay the proper foundation for impeachment of B.D. for the first time in his reply brief. Generally, we will not address an argument raised for the first time in a reply brief. *See Hadden Co., L.P.A. v. Zweier*, 10th Dist. No. 15AP-210, 2016-Ohio-2733, ¶ 15. *See also In re Fuel Adjustment Clauses for Columbus S. Power Co.*, 140 Ohio St.3d 352, 2014-Ohio-3764, ¶ 36. However, we note that the purpose of a reply brief is to afford the appellant an opportunity to respond to the appellee's brief. *Zweier* at ¶ 15. The state argued in its brief on appeal that appellant could not establish a reasonable probability that the result of the trial would have been different if appellant's trial counsel had properly subpoenaed Barber or persuaded the trial court to grant a continuance to secure her appearance at trial because Barber's testimony would have been excluded as inadmissible due to the failure to lay a proper foundation for impeachment by extrinsic evidence. Appellant's argument on reply that his trial counsel was ineffective for failing to lay a proper foundation was presented in response to the arguments contained in the state's brief on appeal. Therefore, in the interest of justice, and because the argument is generally within the scope of appellant's third assignment of error, we will consider this argument despite the fact that it was raised for the first time in appellant's reply brief.

**D. Merger**

{¶ 32} Appellant argues in his fourth assignment of error that the trial court erred by failing to merge his kidnapping conviction with his rape convictions for purposes of sentencing. Appellant was convicted of kidnapping, in violation of R.C. 2905.01(A)(4), which forbids restraining the liberty of a victim by force, threat, or deception for the purpose of engaging in sexual activity with that victim against the victim's will. Appellant argues that this conviction should have merged with his convictions for rape under R.C. 2907.02(A)(2), which involved compelling B.D. to submit to sexual conduct by force or threat of force. At sentencing, the trial court concluded that the kidnapping conviction should not merge with the rape convictions because appellant's restraint of B.D. from leaving the basement was committed separately with a separate animus or intent from the restraint required to commit the rape offenses.

{¶ 33} Ohio's allied offenses statute provides that "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." R.C. 2941.25(A). The Supreme Court of Ohio has held that "two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶ 26. In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25(A), a court must consider the offender's conduct through the following questions: "(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation?" *Id.* at ¶ 31. Separate convictions are permissible should the court, considering the conduct, animus, and import, answer in the affirmative as to any of those questions. *Id.* Where it is determined that the defendant has been found guilty of allied offenses of similar import, the " 'trial court must accept the state's choice among allied offenses, "merge the crimes *into a single conviction for sentencing*, and impose a sentence that is appropriate for the merged offense." ' " (Emphasis sic.) *State v. Bayer*, 10th Dist. No. 11AP-733, 2012-Ohio-5469, ¶ 21, quoting *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, ¶ 13, quoting *State v. Whitfield*, 124

Ohio St.3d 319, 2010-Ohio-2, ¶ 24.  We review de novo a trial court's ruling as to whether convictions merge under the allied offenses doctrine.  *State v. Corker*, 10th Dist. No. 13AP-264, 2013-Ohio-5446, ¶ 28.

{¶ 34} The Supreme Court has acknowledged that "implicit within every forcible rape * * * is a kidnapping" because the victim's liberty is restrained during the act of forcible rape.  *State v. Logan*, 60 Ohio St.2d 126, 130 (1979).  The court provided the following guidelines for determining whether kidnapping and another offense of the same or similar kind were committed with a separate animus:

> (a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;
>
> (b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.

*Id.* at syllabus.

{¶ 35} Appellant concedes that B.D. testified he blocked the stairway when she attempted to leave the basement, but argues that this was not secretive confinement as contemplated in *Logan* because Gwynn knew that appellant and B.D. were in the basement.  Appellant asserts that the only clear statement B.D. made about appellant physically preventing her from leaving the basement was when he struck her in the head.  Appellant argues that any restraint or movement of B.D. was incidental to the underlying crime of rape, which occurred immediately after he struck her.  Therefore, appellant claims, there was no separate animus for the kidnapping conviction and it should have been merged with the rape convictions for purposes of sentencing.

{¶ 36} B.D. and Gwynn both testified that B.D. and appellant were together in the basement for several hours.  Contrary to appellant's assertion, B.D. clearly testified that she attempted to leave the basement after she and appellant had been there for some time, and that appellant blocked her path.  This occurred prior to the assault and rape. By

preventing B.D. from leaving the basement, appellant committed an act that would constitute the crime of kidnapping before the rape occurred. Thus, the trial court did not err by concluding these acts were committed separately and by declining to merge the convictions for the purposes of sentencing. Moreover, B.D. testified that appellant's blows to her head knocked her to the floor and rendered her unconscious. This court and others have held that similar uses of force constituted substantial increases in the risk of harm separate and apart from the force involved in raping a victim, as contemplated in *Logan*. *See State v. Worth*, 10th Dist. No. 10AP-1125, 2012-Ohio-666, ¶ 81, *reconsideration granted on other grounds*, 2012-Ohio-1661 (holding that victim was subjected to a substantial increase in risk of harm separate and apart from rape when appellant knocked victim to the floor, held her down, and repeatedly struck her face before engaging in any sexual conduct); *State v. Coleman*, 3d Dist. No. 1-13-53, 2014-Ohio-5320, ¶ 62 (holding that victim was subjected to a substantial increase in harm separate and apart from rape when victim was transported in an automobile for two miles and was struck on the side of the face while being transported); *State v. Menton*, 7th Dist. No. 07 MA 70, 2009-Ohio-4640, ¶ 132 (holding that victim was subjected to a substantial increase in risk of harm separate and apart from rape when victim was restrained by hitting, biting, choking, and suffocating, and that restraint was prolonged because victim was restrained for one and one-half hours); *State v. Terrell*, 1st Dist. No. C-080286, 2009-Ohio-3257, ¶ 15 (holding that victim was subjected to a substantial increase in risk of harm separate and apart from rape when victim was struck in the face upon exiting her vehicle before being moved to a grassy area nearby where rape occurred). Based on the evidence and testimony presented in this case, we cannot conclude that the trial court abused its discretion by refusing to merge the kidnapping conviction with the rape convictions for purposes of sentencing.

{¶ 37} Accordingly, we overrule appellant's fourth assignment of error.

## IV. Conclusion

{¶ 38} For the foregoing reasons, we overrule appellant's four assignments of error and affirm the judgments of the Franklin County Court of Common Pleas.

*Judgments affirmed.*

TYACK, P.J., and BROWN, J., concur.