DECISION
{¶ 1} Defendant-appellant, Mohamed A. Mohamed, appeals from a judgment of the Franklin County Municipal Court finding defendant guilty, in violation of R.C. 2919.27(A)(1), of recklessly violating the terms of a protection order issued pursuant to R.C. 3113.31. Because the sufficiency and manifest weight of the evidence support the trial court's determination, we affirm.
 {¶ 2} By complaint filed October 14, 2004, defendant was charged with recklessly violating the terms of a protective order by calling the protected person's place of employment and attempting to talk to the protected person. Defendant entered a not guilty plea to the charge, and the matter was tried to the court pursuant to defendant's waiver of his right to a jury trial.
 {¶ 3} According to the state's evidence, the Franklin County Court of Common Pleas, Division of Domestic Relations, on August 23, 2004 issued an ex parte domestic violence civil protection order in favor of Amina Farah against defendant, her husband. On September 14, 2004, a consent agreement and domestic violence civil protection order, signed by Farah and defendant, issued against defendant ordering that he "SHALL NOTINITIATE OR HAVE ANY CONTACT with the protected persons named in this Order or their residences, businesses, places of employment, schools, day care centers, or babysitters. Contact includes, but is not limited to, telephone, fax, e-mail, voice mail, delivery service, writing, or communications by any other means in person or through another person."
 {¶ 4} Farah testified that on September 15, 2004, the day after the protection order was issued, she was working at her usual place of employment as a nurse with Mount Carmel Hospital West. According to Farah, two unit clerks, Brittany Zurek and another identified only as Misty, each received two telephone calls from defendant, who asked to speak with Farah. Misty paged Farah, who was unaware of the caller's identity. Farah testified that when she responded to the page and answered the telephone, she recognized defendant's voice; he was begging to speak to her. She was on the line for approximately one minute, and then she terminated the call. Farah stated that prior to the civil protection order, defendant called her multiple times a day at her place of employment.
 {¶ 5} The state also presented the testimony of Officer Jonathon Dent, a police officer with the city of Columbus for four years. He testified to his investigation of the September 15 incident, including a conversation with Farah, who told him she did not speak with defendant on September 15. Dent's investigation also involved a telephone conversation with Zurek. He decided to proceed with the charge against defendant because Zurek informed him that, while she was working at the hospital on September 15, she received a call for Farah from defendant.
 {¶ 6} Zurek testified at trial that her shift as unit clerk overlapped Farah's shift from 3:00 p.m. to 7:30 p.m. On September 15, 2004, she received a call for Farah; she identified defendant as the caller. Explaining, she stated historically the only calls she received for Farah were from defendant, who in prior calls would identify himself. The trial court inquired how she could know that the male caller on September 15 was defendant. Zurek replied that "just by going on in the past that he has identified himself as her husband. He always greets me in the same manner every time I talk — speak to him on the phone. * * * He always says, `Brittany, how are you doing today?' I always say, `I'm doing fine. How are you?' He says, `I'm doing fine, good, good, good. May I speak to Amina?' Same pattern every time." (Tr. 89.) When the trial court inquired whether the same pattern was followed in the September 15 incident, Zurek stated that it was, though she admitted defendant did not identify himself that day. Zurek learned from a co-worker that defendant was not to speak with Farah, and Zurek therefore told him "`I'm sorry, Amina's not taking your calls,' and I said goodbye." (Tr. 81.) Defendant called a second time, and Zurek again "just told him, `Amina's not taking your calls. Thank you. Have a nice day.'" (Tr. 82.)
 {¶ 7} Following the trial court's decision to overrule defendant's Crim. R. 29 motion for acquittal, defendant testified on his own behalf, denying he placed any telephone calls to Farah's place of employment on September 15. He understood that he was not to contact her at all, testifying "no contact, no telephone, nothing." (Tr. 96.) According to defendant's testimony, he had not spoken with her since September 14, did not telephone her place of employment on September 15, and did not have anyone else contact her place of employment on his behalf.
 {¶ 8} At the conclusion of the evidence and after hearing closing argument, the trial court found defendant guilty of initiating contact with Farah by calling her place of employment on September 15. The trial court found troublesome the inconsistencies between Farah's testimony and that offered through Officer Dent. The trial court, however, found Zurek's testimony to be credible and determined that, based on her testimony, defendant initiated contact through the telephone call placed to Mount Carmel Hospital West on September 15, 2004. Defendant appeals, assigning the following errors:
 ASSIGNMENT OF ERROR I
THE TRIAL COURT ERRED WHEN IT ENTERED A JUDGMENT AGAINST THE APPELLANT WHICH WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.
 ASSIGNMENT OF ERROR II
THE TRIAL COURT ERRED WHEN IT ENTERED A JUDGMENT AGAINST THE APPELLANT WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 9} Because defendant's two assignments of error are interrelated, we address them jointly. Together, they challenge the sufficiency and weight of the evidence supporting the trial court's determination. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. Sufficiency is a test of adequacy. Id. We construe the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus; State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387.
 {¶ 10} When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether the verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. Conley, supra; Thompkins,
at 387 (noting that "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a ` thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony"). Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 11} The parties agree that the case requires proof of the following elements: (1) identity of perpetrator, (2) the mental state, recklessly, (3) initiation of contact with Farah through telephone, (4) venue, Franklin County, and (5) date, September 15, 2004.
 {¶ 12} As to the sufficiency of the evidence, the testimony of Zurek meets all of the five elements when her testimony is construed, as it must be, in favor of the state. According to Zurek, on September 15, 2004, while she was working as unit clerk at Mount Carmel Hospital West, she received a telephone call from defendant who requested to speak with Farah. Through her testimony the state (1) identified defendant as the perpetrator, (2) established that defendant not only recklessly placed the telephone calls in violation of the protection order, but apparently purposely did so, and (3) demonstrated that, through the telephone calls, defendant attempted to contact Farah, the protected person under the civil protection order admitted into evidence, even though defendant knew he was to have no contact by telephone or otherwise with Farah. The parties do not dispute that the hospital is in Franklin County, Ohio, and that the communication was on September 15, 2004.
 {¶ 13} Defendant asserts that, even if the evidence is sufficient, his conviction is against the manifest weight of the evidence, primarily because of the inconsistencies in the testimony offered through the state's witnesses. For example, Farah testified that Misty paged her concerning a telephone call from defendant; that she took the call and spoke with defendant who begged to have the opportunity to speak with her. Zurek, however, testified she received two telephone calls from defendant for Farah, but she did not page Farah, and Farah did not speak with defendant as a result of either call.
 {¶ 14} While our review of the manifest weight of the evidence involves a limited weighing of the evidence, inconsistencies in the testimony generally do not render the verdict against the manifest weight of the evidence. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill (1964), 176 Ohio St. 61, 67; State v.Thompson (1998), 127 Ohio App.3d 511, 529, discretionary appeal not allowed, 83 Ohio St.3d 1451 (stating that "[a] reviewing court must, therefore, accord due deference to the credibility determinations made by the fact-finder"); State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 (observing that "[w]hile the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence"). Indeed, jurors need not believe all of a witness' testimony, but may accept only portions of it as true.Raver, at ¶ 21 (noting that the jury may take note of inconsistencies and resolve them accordingly, "believ[ing] all, part or none of the witness' testimony"); State v. Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v. Caldwell (1992), 79 Ohio App.3d 667. Given that test, we cannot say the trial court clearly lost its way. To the contrary, the testimony of Zurek is substantial in supporting the trial court's determination.
 {¶ 15} Zurek's trial testimony unequivocally identified defendant as the caller on two calls she took as unit clerk on September 15 between the hours of 3:00 p.m. and 7:30 p.m. While admitting she had no training in identifying a caller's voice, she explained why she knew the voice to be that of defendant. Specifically, she testified defendant called on multiple occasions each time Zurek's work schedule overlapped Farah's work hours. In prior calls, defendant identified himself. While he did not identify himself in the two calls placed on September 15, he nonetheless used the same unique greeting that he used in prior calls: "[h]e always greets me in the same manner every time I talk — speak to him on the phone. * * * He always says, `Brittany, how are you doing today?' I always say, `I'm doing fine. How are you?' He says, `I'm doing fine, good, good, good. May I speak to Amina?' Same pattern every time." (Tr. 89.)
 {¶ 16} Defendant nonetheless contends that Zurek's testimony is unbelievable because it, too, is internally inconsistent. Defendant notes that although Zurek testified defendant always identified himself when he called the hospital, on September 15 the caller did not identify himself. As a result, defendant asserts that, to the extent Zurek testified the caller's greeting was identical to that of defendant in prior calls, she is mistaken and not worthy of belief. The trial court, however, could view her testimony in a manner that does not impugn her credibility. Defendant testified he knew he was to have no contact, even by telephone, with Farah. Accordingly, he likely would not identify himself in a telephone call placed to her workplace. Recognizing the potential for misidentification, the trial court pointedly inquired how Zurek knew defendant to be the caller on September 15. Zurek explained defendant's unique greeting, used in the calls prior to September 15 and used again in the September 15 calls. Indeed, even when confronted with Farah's testimony that contradicted the testimony Zurek offered, Zurek did not waiver in her testimony that defendant called the hospital to speak with Farah.
 {¶ 17} Similarly, Zurek's testimony supports the trial court's finding defendant recklessly violated the terms of the protective order. Had defendant placed only one call, he possibly could argue his conduct was only negligent or accidental, rather than reckless. Zurek, however, testified she received two telephone calls from defendant on September 15 in which he sought to speak with Farah. Such testimony suggests not only recklessness, but purposeful conduct in violation of the civil protective order. Zurek's testimony also supports a finding that the incident occurred on September 15 in Franklin County. Defendant thus is unpersuasive in asserting the manifest weight of the evidence does not support the trial court's judgment.
 {¶ 18} For the foregoing reasons, defendant's two assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
Petree and French, JJ., concur.