[Cite as *State v. Rhoades*, 2020-Ohio-2688.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                    :

    Plaintiff-Appellee,                  :

                                               No. 19AP-93

v.                                               :          (M.C. No. 2018CRB-13523)

Alonzo Rhoades,                                  :         (REGULAR CALENDAR)

    Defendant-Appellant.                 :

---

D E C I S I O N

Rendered on April 28, 2020

---

**On brief:** *Zachary M. Klein*, City Attorney, *Bill R. Hedrick*, and *Orly Ahroni*, for appellee. **Argued:** *Orly Ahroni*.

**On brief:** *Alonzo Rhoades*, pro se. **Argued:** *Alonzo Rhoades*.

---

APPEAL from the Franklin County Municipal Court

DORRIAN, J.

{¶ 1} Defendant-appellant, Alonzo Rhoades, appeals pro se from the judgment of conviction and sentence entered by the Franklin County Municipal Court pursuant to a jury verdict finding him guilty of violating a civil protection order. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} The case giving rise to this appeal involves allegations that Rhoades violated a civil protection order requiring him to stay away from Jaide Reinhard ("Jaide"). Rhoades and Jaide were previously in a relationship and have a child together. In August 2017, Jaide petitioned for a domestic violence civil protection order from the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch. A protection order was

issued by consent on September 26, 2017 ("Protection Order"), providing, among other conditions, that Rhoades could not be within 500 feet of Jaide or any place he knew or should know she was likely to be. The Protection Order further provided that if Rhoades accidentally came within 500 feet of Jaide in any public or private place, including roadways, he was required to depart immediately. The Protection Order was effective for four years, until September 26, 2021. A copy of the Protection Order was served on Rhoades on October 10, 2017.

{¶ 3} The case on appeal began when a complaint was filed in the municipal court alleging that on July 2, 2018 Rhoades recklessly violated the Protection Order, a first-degree misdemeanor in violation of R.C. 2919.27(A)(1), by being within 500 feet of Jaide. The case was designated as Municipal Court criminal case No. 2018CRB-13523 ("case No. 13523"). On October 1, 2018, another complaint was filed in the municipal court alleging that on September 30, 2018, Rhoades again violated the Protection Order, a first-degree misdemeanor in violation of R.C. 2919.27(A)(1). That case was designated as Municipal Court criminal case No. 2018CRB-20334 ("case No. 20334"). The state, plaintiff-appellee, moved to consolidate case No. 13523 with case No. 20334 for trial. A jury trial was conducted on the consolidated cases in February 2019.

{¶ 4} Jaide testified at trial that she and her mother, Jennifer Reinhard ("Jennifer"), had lived in the same house on Joos Avenue since 2011. On July 2, 2018, Jaide and Jennifer left their home in separate cars so Jaide could drop off her car for repairs. After leaving Jaide's car to be serviced, they returned home with Jennifer driving. Upon approaching their home, Jaide saw Rhoades' car on Joos Avenue at a stop sign where Joos Avenue intersected a cross street. Jaide testified she recognized Rhoades' car because it was the same one he drove when they were in a relationship. Rhoades was in the driver's seat of the car. Jaide testified she made eye contact with Rhoades for a few seconds and pointed him out to Jennifer. When Rhoades drove away from the intersection, Jennifer turned the car around and drove after him while Jaide tried to get a photograph of Rhoades' car. Jaide testified the two cars passed within 10 to 15 feet of each other before Jennifer turned around to pursue Rhoades. Jaide was unable to take a photograph and they stopped pursuing Rhoades after he exited the neighborhood. Jaide then called police to report the incident. A recording of Jaide's call to police was played for the jury.

{¶ 5} Jaide described Joos Avenue as a short side street in a small, quiet, residential neighborhood. She testified it would not be necessary to drive on Joos Avenue to reach any particular destination. The state presented an aerial photograph of the area around Jaide's home, demonstrating it was a residential neighborhood with no businesses located on that block of Joos Avenue. Jaide estimated the stop sign where she spotted Rhoades was about 300 feet from her residence.

{¶ 6} Jennifer also testified at trial, stating she was driving home with Jaide on July 2, 2018 after dropping off Jaide's car to be serviced, when she saw Rhoades' car stopped at a stop sign at the end of Joos Avenue. After passing Rhoades, Jennifer pulled into the first driveway on their street to turn around. She then pursued Rhoades' car until it exited the neighborhood.

{¶ 7} Columbus Division of Police Officer Matthew Carroll testified he and his partner, Officer Anthony Nowalk, were dispatched to the Reinhards' residence on July 2, 2018. They spoke with Jaide about the incident and Officer Carroll subsequently prepared and filed a complaint against Rhoades. Officer Carroll testified he did not speak with anyone other than Jaide about the incident because he did not find it necessary. Officer Nowalk testified he reviewed a copy of the Protection Order while Officer Carroll interviewed Jaide. Officer Nowalk stated he measured the distance between the stop signs at either end of the Reinhards' block on Joos Avenue using a traffic-detection laser as 432 feet. He testified that was approximately twice the distance between the Reinhards' house and the stop sign where Jaide saw Rhoades.

{¶ 8} With respect to case No. 20334, Jaide testified she called police on September 30, 2018 because the neighbors who lived directly across the street told her they had seen a man and woman banging on the doors and looking in the windows of the Reinhards' house earlier in the day, while the Reinhards were away. A recording of Jaide's call to police on September 30, 2018 was played for the jury.

{¶ 9} Mike Franceschelli testified he lives directly across the street from the Reinhards and was friends with them. He testified that on September 30, 2018, while he was in the front yard of his home, he saw Rhoades pull up in front of the Reinhards' house in a car with a woman in the passenger seat. He recognized Rhoades because he had previously seen him together with Jaide. Rhoades exited the car and pounded on the

Reinhards' front door, then went to the back of the house and pounded on the back door. He testified he told Jennifer what had occurred after the Reinhards returned home later that day and subsequently spoke to police about what he saw. Nancy Franceschelli similarly testified that she lives directly across the street from the Reinhards. On September 30, 2018, while in her living room, she saw a car with a man and woman pull up in front of the Reinhards' house. The man exited the car, went to the front door of the Reinhards' house, and started beating on the door. The man then walked around the house and went through the gate into the back yard. She did not recognize the man who was banging on the door. She talked to Jennifer about the incident and later spoke with a police officer about it.

{¶ 10} Officer Nowalk testified he was working without a partner on September 30, 2018 when he was dispatched to the Reinhards' residence. He spoke with Jaide and then interviewed the Franceschellis about what they observed. Based on these interviews, Officer Nowalk prepared and filed a complaint against Rhoades.

{¶ 11} Following the state's presentation, Rhoades' trial counsel moved for acquittal under Crim.R. 29, arguing the evidence was insufficient to sustain convictions. The trial court denied the motion for acquittal. Rhoades' trial counsel indicated to the court that Rhoades intended to testify in his own defense. Before the defense presentation began, the prosecutor moved to suppress a grocery store receipt Rhoades had provided in discovery, arguing it was inadmissible hearsay. Rhoades' trial counsel argued the receipt was admissible as a business record. When the trial court indicated it was inclined to grant the motion to suppress, Rhoades' trial counsel moved for a continuance to try to secure a witness from the grocery store to authenticate the receipt. The following day, Rhoades' trial counsel indicated Rhoades decided not to testify in his own defense, and he wished to proceed to closing arguments without presenting any additional evidence. The prosecutor and Rhoades' trial counsel made closing arguments and the case was submitted to the jury.

{¶ 12} The jury was unable to reach a decision in case No. 20334, relating to the September 30, 2018 incident, and the trial court declared a mistrial in that case. The court then dismissed the charge in case No. 20334 at the prosecutor's request. In case No. 13523, the jury found Rhoades guilty of violating the Protection Order. The trial court sentenced Rhoades to 180 days of incarceration, with 39 days of jail-time credit. The court suspended the sentence and placed Rhoades on probation for two years.

## II.  Assignments of Error

{¶ 13} Rhoades appeals and assigns the following nine assignments of error for our review:

[I.] The trial court erred and abused its discretion by not separating each case as its own separate incident.

[II.] The trial court erred and abused its discretion by not recognizing the biases of the judge due to history regarding catch court and history with simuler case.

[III.] The prosecution failed to disclose the full text of the consent agreement and its rules and limitations.

[IV.] the honorable judge did see that after both key witness rule 29 was clear and applicable or that the wemon in testomony where biesed and provided no cretable evidnce to prove there case

[V.] the responding officers did not meet the standered operating procieder gather evidence or hear from more then one party who by her own abmition carried strong biase

[VI.] evidence was held and hidden till the minute of it being shown in court not allowing the othwer party the opertunity to see before the jury

[VII.] Defentents counsal advised not to testifie do to evidence not yet shown and lack of berdon of proof

[VIII.] the judge grandented a last ditch efferot to block the voice of the defendent by trying to suprese evidence with goes agents the judges ethics provided on his clerk of court profile

[IX.] the court never established why the defince could have been in the naighbor hood or that the protected party lived there

(Sic passim.)

## III.  Discussion

## A. Joinder of offenses for trial

{¶ 14} Rhoades argues in his first assignment of error the trial court abused its discretion by joining case Nos. 13523 and 20334 for trial.  Rhoades argues there was a risk

of jury confusion arising from the testimony and evidence, and a risk that if the jury found him guilty of one offense they would assume he was guilty of the other.

{¶ 15} Under Crim.R. 13, a court may order multiple complaints to be tried together if the offenses or defendants could have been joined in a single complaint. Crim.R. 8(A) provides that multiple offenses may be charged in the same complaint if the offenses "are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Generally, the law favors the joinder of multiple offenses into a single trial. *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, ¶ 28.

{¶ 16} If similar offenses are properly joined, a defendant may move to sever the charges, pursuant to Crim.R. 14, which provides that if a defendant is prejudiced by a joinder of complaints for trial, the court shall order a separate trial or provide such other relief as justice requires. To demonstrate a trial court erred by denying a motion to sever, a defendant "must affirmatively demonstrate (1) that his rights were prejudiced, (2) that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and (3) that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial." *State v. Schaim*, 65 Ohio St.3d 51, 59 (1992).

{¶ 17} A trial court's decision on joinder is subject to review for abuse of discretion. *State v. Morris*, 10th Dist. No. 18AP-208, 2018-Ohio-5252, ¶ 34. In the present case, Rhoades did not oppose the state's motion for joinder prior to trial and did not move to sever the complaints for trial under Crim.R. 14. Therefore, he has forfeited all but plain error. *Id.* Plain error exists when an error is plain or obvious and affects a substantial right. *State v. Griffin*, 10th Dist. No. 10AP-902, 2011-Ohio-4250, ¶ 13. The error must constitute an obvious defect in the legal proceedings and there must be a reasonable probability that the error affected the outcome. *State v. Barrie*, 10th Dist. No. 15AP-848, 2016-Ohio-5640, ¶ 32. Appellate courts find plain error with the utmost caution, under exceptional circumstances to prevent a manifest miscarriage of justice. *Id.*

{¶ 18} A trial court may sever properly joined offenses where the defendant affirmatively demonstrates prejudice resulting from a joint trial. *Morris* at ¶ 36. The state

can refute a claim of prejudice by demonstrating that: (1) the evidence of one offense could be introduced under Evid.R. 404(B) at the trial of the other offense, or (2) the evidence of the offenses joined at trial is simple and direct. The state need only satisfy one of these tests to negate a claim of prejudice. *Id.* at ¶ 37. *See also State v. Lott*, 51 Ohio St.3d 160, 163 (1990) ("[W]hen simple and direct evidence exists, an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence of these crimes as 'other acts' under Evid.R. 404(B).").

{¶ 19} "Evidence is 'simple and direct' if the jury is capable of segregating the proof required for each offense." *State v. Wilson*, 10th Dist. No. 10AP-251, 2011-Ohio-430, ¶ 23. The offenses in the joined cases were the same, but they were committed on different days and involved different conduct. The evidence for case No. 13523 was provided by Jaide, Jennifer, and the responding police officers, based on their testimony about what occurred on July 2, 2018. The evidence for case No. 20334 was provided by the Franceschellis, testifying what they observed on September 30, 2018. Although Jaide also testified about the September 30, 2018 incident, her testimony was based on the Franceschellis' accounts and mirrored their testimony. Thus, the evidence as to each case was simple and direct. *See State v. McBride*, 10th Dist. No. 10AP-585, 2011-Ohio-1490, ¶ 12 ("Here, the evidence of the offenses is simple and direct and is not confusing or difficult to separate. The offenses in each indictment were analytically and logically separate: burglaries and thefts which occurred in different buildings on different days. Although the offenses involved similar conduct, the offenses were separate and not so complex that the jury would have difficulty separating the proof required for each offense."); *see also State v. Wigle*, 9th Dist. No. 25593, 2011-Ohio-6239, ¶ 24 (finding evidence of each charge was simple and direct for joined offenses of violating a protection order, resisting arrest, and disorderly conduct where defendant's neighbor testified about events giving rise to charge of violating protection order and arresting officers testified about events leading to charges of resisting arrest and disorderly conduct). Moreover, although the jury found Rhoades guilty in case No. 13523, they were unable to reach a verdict in case No. 20334. This demonstrates the jury was able to distinguish between the evidence as to each offense. *See Wigle* at ¶ 24 ("[T]he fact that the jury acquitted Wigle of the protection order violation, and convicted him of the remaining charges demonstrates that the jury was capable of separating the

issues.").   Under these circumstances, we conclude the trial court did not plainly err by joining the cases for trial.

{¶ 20} Accordingly, we overrule Rhoades' first assignment of error.

## B. Judicial bias

{¶ 21} In his second assignment of error, Rhoades asserts the trial judge was biased against him.  Rhoades claims the trial judge is generally biased in favor of women, citing his participation in a specialized human trafficking docket and statements favorable to women allegedly made by the trial judge in speeches, articles, and other trials.  Rhoades further argues the trial judge's bias was demonstrated by the revocation of a personal recognizance bond before trial.

{¶ 22} If a municipal court judge is alleged to have a bias or prejudice for or against any party to a proceeding pending before the judge, or be otherwise disqualified to preside over the proceeding, any party to the proceeding may file an affidavit of disqualification with the clerk of the Ohio Supreme Court.  R.C. 2703.031.  "R.C. 2703.031 provides the exclusive means by which a litigant may claim that a municipal court judge is unduly interested, biased, or prejudiced."  *Columbus Checkcashers, Inc. v. Guttermaster, Inc.*, 10th Dist. No. 13AP-106, 2013-Ohio-5543, ¶ 33.  *See also State v. Varouh*, 9th Dist. No. 18CA011415, 2020-Ohio-528, ¶ 27 ("[R.C. 2701.031] is the exclusive means by which a litigant may assert that a municipal court judge is biased or prejudiced.").  The clerk of the municipal court is notified when an affidavit of disqualification of a municipal court judge is filed and must enter a notice on the docket of the proceeding.  R.C. 2701.03(C)(1)(b) and (c). There is no indication on the docket of either municipal court case that Rhoades filed an affidavit of disqualification of the municipal court judge with the clerk of the Supreme Court.  Therefore, Rhoades failed to invoke the jurisdiction of the proper court to review his claim of judicial bias.  *State v. Hussein*, 10th Dist. No. 15AP-1093, 2017-Ohio-5519, ¶ 9.  *See also State v. Castile*, 10th Dist. No. 13AP-10, 2014-Ohio-1918, ¶ 13 ("Because appellant failed to file an affidavit of disqualification against the trial judge, he forfeited his complaint [of judicial bias] on appeal.").

{¶ 23} Accordingly, we overrule Rhoades' second assignment of error.

**C. Sufficiency and weight of the evidence**

{¶ 24} In his third, fourth, fifth, and ninth assignments of error, Rhoades appears to challenge the sufficiency of the evidence supporting his conviction and to argue that the conviction was against the manifest weight of the evidence. We will consider these assignments of error together.

{¶ 25} "Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 36, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Where the evidence, "if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt," it is sufficient to sustain a conviction. *Id.* "The testimony of a single witness, if believed by the finder of fact, is sufficient to support a criminal conviction." *State v. Booker*, 10th Dist. No. 15AP-42, 2015-Ohio-5118, ¶ 18. Because a Crim.R. 29 motion questions the sufficiency of the evidence, we apply the same standard of review on appeal of a denial of a Crim.R. 29 motion as in a challenge to the sufficiency of the evidence. *State v. Kearns*, 10th Dist. No. 15AP-244, 2016-Ohio-5941, ¶ 44.

{¶ 26} Rhoades was charged with violating R.C. 2919.27(A)(1), which prohibits recklessly granting a protection order or consent agreement issued under R.C. 2919.26 or 3113.31. The latter statute provides for issuance of a domestic violence civil protection order or consent agreement. "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

{¶ 27} Jaide testified she had a civil protection order against Rhodes. A copy of the Protection Order was introduced into evidence, establishing it was a domestic violence civil protection order issued by consent of the parties pursuant to R.C. 3113.31. The Protection Order was effective from September 26, 2017 through September 26, 2021, and prohibited

Rhoades from certain conduct with respect to Jaide, including being within 500 feet of where she was or any place she was likely to be. The order to serve the Protection Order was entered into evidence, showing a copy of the Protection Order was served on Rhoades on October 10, 2017. Jaide testified she has lived at the same address on Joos Avenue since 2011. That address was also shown as Jaide's address on the Protection Order. Jaide and Jennifer both testified that on July 2, 2018, they saw Rhoades in the driver's seat of his car at a stop sign at the end of their block on Joos Avenue. Jaide testified the stop sign where she saw Rhoades was located 300 feet or less from her house. Officer Nowalk testified he measured the distance between the stop signs at either end of the block where Jaide's residence was located on Joos Avenue as 432 feet. He testified that was roughly twice the distance from Jaide's residence to the stop sign. Jaide and Jennifer also testified their vehicle passed Rhoades' car on the road, with Jaide estimating the distance between the two vehicles when they passed as 10 to 15 feet.

{¶ 28} Viewing the evidence in the light most favorable to the state, a rational trier of fact could have found beyond a reasonable doubt that Rhodes was guilty of violating R.C. 2919.27(A)(1) by being at the stop sign at the end of Joos Avenue on the block where Jaide's residence was located, because he was aware of the Protection Order and disregarded a substantial and unjustifiable risk that being in that location would place him within 500 feet of Jaide or a place she was likely to be while the Protection Order was in effect and prohibited such conduct. *See, e.g., State v. Kaseda*, 11th Dist. No. 2012-L-002, 2012-Ohio-4652, ¶ 11-12 (finding evidence sufficient to support conviction for violating R.C. 2919.27(A)(1) where the state presented evidence that a protection order prohibiting defendant from coming within 500 feet of the protected person was in effect at time of arrest, defendant was apprehended within 500 feet of the protected person's residence, and there was testimony that defendant was aware of the existence of the protection order); *State v. Mohamed*, 10th Dist. No. 05AP-29, 2005-Ohio-4928, ¶ 12 (finding evidence sufficient to support conviction for violating R.C. 2919.27(A)(1) where protection order was in effect prohibiting defendant from initiating or having contact with the protected person, defendant knew of the protection order, and defendant called the protected person's place of work and asked to speak with her). Thus, the evidence presented at trial was sufficient to sustain the jury's verdict.

{¶ 29}  "While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief."  *Cassell* at ¶ 38, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25.  When evaluating a challenge to a verdict as being against the manifest weight of the evidence, "an appellate court may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. McCrary*, 10th Dist. No. 10AP-881, 2011-Ohio-3161, ¶ 12, citing *Thompkins* at 387.  In conducting our review of the evidence, "we are guided by the presumption that the jury, or the trial court in a bench trial, 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' "  *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).  An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the " 'exceptional case in which the evidence weighs heavily against the conviction.' "  *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 30} Rhoades alleges the testimony from Jaide and Jennifer was clearly contradictory; however, he fails to cite any specific contradictions or inconsistencies.  Even if there were inconsistencies, a defendant "is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial."  *State v. Chandler*, 10th Dist. No. 05AP-415, 2006-Ohio-2070, ¶ 9.  "[T]he jury may take note of the inconsistencies and resolve them accordingly, 'believ[ing] all, part, or none of a witness's testimony.' "  *State v. Taylor*, 10th Dist. No. 17AP-103, 2017-Ohio-8327, ¶ 37, quoting *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21.  Rhoades also attacks Officer Nowalk's credibility, noting he did not interview Jennifer about the July 2, 2018 incident, and alleging that laser scanning equipment is not part of the standard department issued traffic equipment.  Officer Nowalk admitted at trial that he did not interview Jennifer on July 2, 2018, explaining he did not realize at the time that she had also witnessed the

incident. To the extent Rhoades suggests this reduces the credibility of Officer Nowalk's investigation or his testimony, the jury was aware of this issue and able to consider it in weighing Officer Nowalk's credibility. With respect to the measurements, Officer Nowalk testified he measured the distance between the stop signs using his department issued laser traffic detector, which could be used to measure distance. Rhoades does not cite anything in the record to contradict Officer Nowalk's testimony about the laser measuring device.

{¶ 31} Rhoades also argues there was a grocery store receipt and other materials establishing he was not on Joos Avenue on July 2, 2018 at the time Jaide and Jennifer claimed to see him. As discussed below, the grocery store receipt was disclosed in pretrial discovery but was not admitted into evidence. Likewise, none of the other materials Rhoades refers to were admitted into evidence at trial or otherwise made part of the record. Finally, Rhoades argues there was no evidence he attempted to talk to or otherwise make contact with Jaide. However, as explained above, the Protection Order prohibited Rhoades from being within 500 feet of Jaide or a place where she was likely to be. Therefore, it was not necessary for the state to establish Rhoades made any attempt to speak with or otherwise contact Jaide to prove a violation of the Protection Order.

{¶ 32} Jaide and Jennifer both testified they saw Rhoades in his car at a stop sign at the end of the block of Joos Avenue where their home was located. They both testified they pursued Rhoades' car as it exited their neighborhood in an attempt to get a photograph, but were unable to take a photograph. Both Jaide and Officer Nowalk testified that the stop sign where Jaide and Jennifer saw Rhoades was less than 500 feet from Jaide's home. There was documentary evidence establishing the Protection Order prohibited Rhoades from being within 500 feet of Jaide or any place she was likely to be, that the Protection Order was in effect on July 2, 2018, and Rhoades was aware of the Protection Order. Based on our review of the evidence, we cannot conclude the jury clearly lost its way in finding Rhoades guilty of violating R.C. 2919.27(A)(1).

{¶ 33} Because we conclude the conviction was supported by sufficient evidence and was not against the manifest weight of the evidence, we overrule Rhoades's third, fourth, fifth, and ninth assignments of error.

**D. Suppression of evidence**

{¶ 34} In his sixth, seventh, and eighth assignments of error, Rhoades presents arguments relating to the suppression of evidence he intended to introduce at trial. Rhoades argues the trial court erred by suppressing a grocery store receipt that he claims would have established he was not on Joos Avenue on July 2, 2018 at the time Jaide and Jennifer claimed to have seen him.

{¶ 35} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, ¶ 32, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. A court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Burnside* at ¶ 8. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

{¶ 36} After the close of the state's presentation, the prosecutor moved to suppress the grocery store receipt, which had been provided in pretrial discovery. The prosecutor argued the receipt was hearsay and did not qualify for any of the exceptions to the hearsay rule under the rules of evidence. Specifically, the prosecutor asserted the receipt was not admissible under the business records exception to the hearsay rule because, based on the pretrial witness disclosures, Rhoades did not plan to present a representative of the grocery store or other qualified witness to testify about the receipt. The prosecutor argued that because it was possible to falsify or forge a receipt, it was necessary for Rhoades to present a qualified witness to authenticate the grocery store receipt. Rhoades' trial counsel argued the grocery store receipt was admissible as a business record and that Rhoades would be able to testify to the authenticity of the receipt and the circumstances under which he received it. He further asserted Rhoades would be able to present evidence of having a credit card that matched the payment information on the grocery store receipt. When the trial court indicated it was likely to grant the motion to suppress, Rhoades' trial counsel requested a continuance to pursue securing testimony from a representative of the grocery store. The trial court granted a continuance until the following day. Ultimately, Rhoades elected not to put on any evidence or testify in his own defense. Thus, although the trial court indicated it was inclined to grant the motion to suppress, it did not issue a final ruling

on the motion.  Further, because Rhoades elected not to put on any evidence, the grocery store receipt was not proffered for admission as evidence.  Notwithstanding the lack of a final ruling, because the trial court indicated it was inclined to grant the state's motion to suppress, we will consider whether the grocery store receipt would have been admissible.

{¶ 37} Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Under the rules of evidence, a statement includes a written assertion. Evid.R. 801(A). Generally, hearsay evidence is not admissible, except as otherwise permitted under a constitutional provision, statute, or rule. Evid.R. 802.  Evid.R. 803(6) provides an exception to the prohibition on hearsay evidence for records of "regularly conducted business activity * * * if it was the regular practice of that business activity to make the * * * record * * * as shown by the testimony of the custodian or other qualified witness."

{¶ 38} Rhoades suggests the grocery store receipt would have established his whereabouts as somewhere other than Joos Avenue on July 2, 2018, when Jaide and Jennifer claimed to have seen him.  Thus, if offered into evidence, the receipt would have been hearsay because it was an out-of-court statement offered for the truth of the matter asserted—i.e., the date, time, and location information contained in the receipt.  As such, it would have been inadmissible unless Rhoades could establish that it fell within an exception to the hearsay rule.

{¶ 39} A store receipt may be admissible as a business record under Evid.R. 803(6). *See State v. Darazim*, 10th Dist. No. 14AP-203, 2014-Ohio-5304, ¶ 36 ("Had the receipt been offered into evidence, it may have qualified for the business records exception to hearsay contained in Evid.R. 803(6)."). To qualify for admission under Evid.R. 803(6), a business record must satisfy four essential elements: (1) it must be one regularly recorded in a regularly conducted activity, (2) it must have been entered by a person with knowledge of the act, (3) it must have been recorded at or near the time of the transaction, and (4) a foundation must be laid by the custodian of records or some other qualified witness. *State v. Hood*, 135 Ohio St.3d 137, 2012-Ohio-6208, ¶ 39.  A qualified witness is someone with enough familiarity with the record-keeping system of the business to explain how the record came into existence in the ordinary course of business.  *Id.*  Rhoades has failed to

establish that he was the custodian of records for the grocery store in question or otherwise had sufficient familiarity with the grocery store's record-keeping system to explain how the receipt was created in the ordinary course of business, or that he would have been able to produce testimony from the custodian of records or other qualified witness. *See, e.g., State v. Shaheen*, 3d Dist. No. 5-97-03 (July 29, 1997) (holding that loss-prevention manager of retail store was a qualified witness for purpose of admission of inventory history and refund receipt from that store); *State v. Early*, 2d Dist. No. CA 10827 (Dec. 30, 1988) (holding retail store receipt was properly admitted as a business record where general manager and apparel manager for the store testified regarding process for creation of receipts from the store). Thus, while the grocery store receipt was potentially admissible under the business records exception to the hearsay rule, Rhoades fails to demonstrate he could present a custodian or other qualified witness to authenticate the receipt.

{¶ 40} Accordingly, we overrule Rhoades' sixth, seventh, and eighth assignments of error.

**E. Ineffective assistance of counsel**

{¶ 41} In addition to referring to the exclusion of the grocery store receipt in his seventh assignment of error, Rhoades also appears to suggest he received ineffective assistance of counsel. Rhoades indicates his trial counsel advised him not to testify in his own defense, and asserts this limited his ability to present certain evidence he argues would tend to establish he was not present on Joos Avenue on July 2, 2018.

{¶ 42} We apply a two-part test to evaluate claims of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-42 (1989). "First, the defendant must show that counsel's performance was deficient. * * * Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland* at 687. To establish prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

{¶ 43} Generally, a licensed attorney in Ohio is presumed to be competent and trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Jones*, 10th Dist. No. 16AP-803, 2017-Ohio-

5529, ¶ 11. Appellate courts normally refrain from second-guessing strategic decisions made at trial. *State v. Jackson*, 107 Ohio St.3d 300, 2006-Ohio-1, ¶ 138. The decision whether to allow a defendant to testify in his own defense usually constitutes a tactical decision. *State v. Hughes*, 10th Dist. No. 14AP-360, 2015-Ohio-151, ¶ 69.

{¶ 44} To the extent Rhoades suggests his trial counsel was ineffective by advising him not to testify, he relies on matters outside the record. The only evidence in the record relating to Rhoades' ultimate decision not to testify indicates his trial counsel discussed the implications of testifying but does not reveal any specific advice his trial counsel gave. After the close of the state's presentation, Rhoades' trial counsel indicated Rhoades was inclined to testify:

> The Court: And I believe Mr. Rhoades would like to testify.
>
> [Rhoades' trial counsel]: Your Honor, I have discussed that with Mr. Rhoades. At this point, I have talked to him about all of the potential ramifications of doing so. It is my belief that it is his intention to testify in his own defense.

(Tr. Vol. II at 177.) The prosecutor then moved to suppress the grocery store receipt and Rhoades' trial counsel obtained a continuance. When trial resumed the following day, Rhoades' trial counsel informed the court Rhoades had chosen not to testify:

> [Rhoades' trial counsel]: Your Honor, yesterday at the close of -- at the close of the State's case, we had sort of contemplated timing and the decision by Mr. Rhoades to testify at that point. I have had several discussions with Mr. Rhoades, as well as his family, and it's my understanding that at this point that he has decided not to testify, and we would then proceed directly to closing and charge of the jury. I did want to put that on the record, since yesterday we had put out that it was my belief that he was going to testify. So I just want to make the record clear. It was his decision today not to testify.

(Tr. Vol. II at 191). Although the transcript clearly indicates Rhoades and his trial counsel discussed whether Rhoades should testify, the record does not contain any information about advice Rhoades' trial counsel may have given regarding that decision. Because a claim of ineffective assistance of counsel arising from any advice Rhoades' trial counsel may have given about whether to testify relies on matters outside the record, such a claim would not be appropriate on direct appeal. *See State v. Davis*, 10th Dist. No. 05AP-193, 2006-

Ohio-5039, ¶ 19 ("When allegations of ineffective assistance of counsel hinge on facts not appearing in the record, the proper remedy is a petition for post-conviction relief rather than a direct appeal.").

{¶ 45} Accordingly, to the extent Rhoades' seventh assignment of error asserts a claim of ineffective assistance of counsel, we overrule the seventh assignment of error.

## IV. Conclusion

{¶ 46} For the foregoing reasons, we overrule Rhoades' nine assignments of error and affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

BROWN and BEATTY BLUNT, JJ., concur.