[Cite as *Glass v. Franklin Cty. Dept. of Animal Care & Control*, 2023-Ohio-4804.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Timothy M. Glass, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 22AP-519 |
| v. | : | (M.C. No. 2022EVA-60334) |
| Franklin County Department of Animal Care and Control, | : | (REGULAR CALENDAR) |
| | : | |
| Defendant-Appellee. | : | |
| | : | |
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 22AP-526 |
| v. | : | (M.C. No. 2022ERB-71040) |
| Timothy M. Glass, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 28, 2023

**On brief:** *Timothy M. Glass*, pro se. **Argued:** *Timothy M. Glass*.

**On brief:** *Zachary M. Klein*, City Attorney, *Melanie R. Tobias-Hunter*, Deputy Chief, *Orly Ahroni*, Appellate Unit Director, and *Dave Pelletier*, for appellee. **Argued:** *Dave Pelletier*.

APPEALS from the Franklin County Municipal Court

DORRIAN, J.

{¶ 1} Plaintiff-appellant/defendant-appellant, Timothy M. Glass, appeals from judgments of the Franklin County Municipal Court, Environmental Division, affirming a

designation of his dog as a dangerous dog and convicting him of failure to confine or control his dog. For the following reasons, we affirm the trial court judgments.

**I. Facts and Procedural History**

{¶ 2} On May 4, 2022, Franklin County Sheriff's Office Detective Jeff Reed ("Det. Reed") was performing a residence verification at Glass's home. While Det. Reed was on the front porch, a dog ran from behind the house, jumped onto the porch, and bit his hand. Deputy Warden Joseph Callison of the Franklin County Department of Animal Care and Control, Enforcement Division, was dispatched to respond to the incident. Deputy Warden Callison advised Glass the dog was being designated as dangerous and Glass was cited for failure to confine or control the dog.

{¶ 3} Glass requested a hearing to contest the dangerous dog designation on May 9, 2022, in Franklin County Municipal Court case No. 22EVA-60334 ("case No. 60334"). On June 3, 2022, in Franklin County Municipal Court case No. 22ERB-71040 ("case No. 71040"), a complaint was filed against Glass for failure to confine or control the dog, an unclassified misdemeanor in violation of R.C. 955.22(C).

{¶ 4} Glass filed a copy of his demand for discovery in case No. 71040 with the court on June 9, 2022 containing a certificate of service indicating the discovery demand had been mailed to the prosecutor the same day. In case No. 60334, Glass filed a "counterclaim" alleging he was owed restitution of $6,027.67 for expenses incurred due to the dangerous dog designation. Glass also subpoenaed the Columbus city attorney to testify as a witness. Plaintiff-appellee, State of Ohio, moved to quash the subpoena of the Columbus city attorney, asserting he had no direct involvement in the designation of Glass's dog as dangerous and that Glass failed to demonstrate substantial need for the city attorney's testimony.

{¶ 5} At a hearing on both cases on July 19, 2022, the trial court granted the state's motion to quash the subpoena for the Columbus city attorney. The trial court also dismissed Glass's "counterclaim" in case No. 60334 as moot, concluding Glass could not bring a counterclaim in his appeal of the dangerous dog designation. When the court attempted to commence trial on the cases, Glass indicated he had not received any response to his discovery request. The prosecutor asserted he was never served with a motion for discovery and requested a short continuance to comply with the discovery request. When

determining the rescheduled trial date, the prosecutor argued the continuance to respond to the discovery request would toll the speedy-trial deadline. Glass argued his speedy-trial time should not be tolled because he had served the discovery request on the prosecutor in June. Over Glass's objection, the trial court granted a continuance and scheduled the trial for August 1, 2022.

{¶ 6} At the August 1, 2022 trial, Glass moved to dismiss the charge in case No. 71040 based on a violation of his right to a speedy trial. As in the prior hearing, the prosecutor argued Glass's speedy-trial time was tolled for a reasonable time for the state to respond to his discovery request. The trial court denied Glass's motion to dismiss. Glass also asserted the discovery he received was incomplete, claiming the state failed to provide photographs and body camera video. The prosecutor admitted that his own copy of the electronic photographs, which he had not previously checked, was blank, but asserted he did not plan to present any photographs as evidence. The prosecutor asserted that Det. Reed was not wearing a body camera at the time of the incident. The trial court ruled Glass had been given all relevant discovery information and proceeded with trial.

{¶ 7} Det. Reed testified he went to Glass's home to perform a random address verification on May 4, 2022. He was in plain clothes and driving an unmarked vehicle. When he drove into Glass's driveway, Det. Reed saw a "beware of dog" sign on the mailbox. (Aug. 1, 2022 Tr. at 22.) He looked for a dog in the front yard before getting out of his car but did not see one. There was no fence or gated area in the front yard. Det. Reed walked approximately 50 feet from his car to Glass's porch. After reaching the porch, but before knocking on the door, Det. Reed heard a door open behind the house and saw a dog come running around the house. The dog initially ran to Det. Reed's car; then, after seeing Det. Reed, it ran and jumped on the porch. Det. Reed testified he put out his hand to protect himself and the dog bit his hand, causing a puncture wound. Det. Reed then kicked the dog away from him and pulled out his weapon. Glass came out of the house and asked if Det. Reed was going to shoot his dog. Glass's wife also came out of the house and stated she had seen Det. Reed's car in the driveway. Det. Reed contacted his sergeant, who contacted the Franklin County Department of Animal Care and Control.

{¶ 8} Deputy Warden Callison was dispatched to investigate the incident at Glass's home. He took a statement from Det. Reed and observed a bite wound on Det. Reed's hand,

between the thumb and forefinger. He took photographs of the dog. Deputy Warden Callison testified there was no fence in the front yard of the home and the dog was not wearing an "invisible fence" collar. (Aug. 1, 2022 Tr. at 55.) He concluded there was no indication the dog was provoked before it bit Det. Reed. Deputy Warden Callison advised Glass that the dog was being designated as dangerous because of the injury-causing bite.

{¶ 9} Deputy Warden Callison testified that "any time a dog that is running loose, unprovoked, and causes injury to a person, it is designated as dangerous, [a]nd a failure to control charge usually goes along with that, unless * * * the dog was provoked or something like that." (Aug. 1, 2022 Tr. at 46.) Deputy Warden Callison further testified that a charge was filed against Glass "because there was an injury as a result of the dog not being physically confined or restrained." (Aug. 1, 2022 Tr. at 47.)

{¶ 10} Glass testified on his own behalf, asserting the dog was a guard dog trained to identify people coming to his house with firearms. He asserted the dog would bark as a warning at a perceived threat. Glass claimed the dog was confined to the property using an "invisible fence" and had not escaped the property. (Aug. 1, 2022 Tr. at 67.) Glass believed the dog had been provoked before biting Det. Reed because it had never bitten anyone before, and claimed some of his neighbors stated they saw Det. Reed kick the dog. Glass also testified "I don't have collars on the dog." (Aug. 1, 2022 Tr. at 69.)

{¶ 11} At the conclusion of trial, in case No. 71040, the court found the state proved beyond a reasonable doubt all the elements of failure to confine or control a dog and found Glass guilty of that charge. The court imposed a $75 fine and court costs. In case No. 60334, the trial court affirmed the dangerous dog designation and granted Glass 14 days to register the dog as dangerous and comply with all relevant laws and ordinances.

## II. Assignments of Error

{¶ 12} Glass appeals and assigns the following five assignments of error for our review:

> I. ANIMAL CONTROL LACKED AUTHORITY IN THE FIRST INSTANCE TO DETERMINE THE DOG WAS DANGEROUS CONTRARY TO LAW AND O.R.C. 955 IS UNCONSTITUTIONAL FOR VAGUENESS IN NOT ESTABLISHING THE APPROPRIATE AUTHORITY.

II. THE TRIAL COURT FAILED TO GRANT A MOTION TO DISMISS BASED ON VIOLATION OF SPEEDY TRIAL RIGHTS.

III. THE PROSECUTION FAILED TO PROVIDE FULL DISCOVERY IN VIOLATION OF BRADY RIGHTS AND IS GROUNDS FOR A NEW TRIAL.

IV. THE CONVICTION FOR DANGEROUS DOG AND CONFINEMENT IS BASED ON INSUFFICIENT EVIDENCE THAT DOES NOT SATISFY ALL THE ELEMENTS OF THE OFFENSE UNDER O.R.C. 955.22.

V. THE APPELLANT WAS DENIED A FAIR TRIAL BEFORE AN UNBIASED COURT.

## III. Analysis

### A. Authority to designate a dog as dangerous

{¶ 13} In his first assignment of error, Glass asserts the Franklin County Department of Animal Care and Control, and Deputy Warden Callison acting as an employee of that department, lacked authority to designate his dog as dangerous.

{¶ 14} A dangerous dog is one that without provocation has caused injury, other than killing or serious injury, to a person, killed another dog, or been the subject of three or more violations of R.C. 955.22(C). R.C. 955.11(A)(1). Under R.C. 955.222(B), "[i]f a person who is authorized to enforce [R.C. Chapter 955] has reasonable cause to believe that a dog in the person's jurisdiction is a * * * dangerous dog * * *, the person shall notify the owner * * * of that dog, by certified mail or in person" that the dog has been designated as dangerous and that the owner may request a hearing regarding the determination. Because Glass's dog injured Det. Reed, Deputy Warden Callison designated it as dangerous and notified Glass of the designation.

{¶ 15} Glass argues that Deputy Warden Callison, an employee of the Franklin County Department of Animal Care and Control, was not a "person who is authorized to enforce" R.C. Chapter 955. Glass admits that R.C. 955.12 authorizes a county dog warden to enforce the provisions of R.C. 955.01 through 955.27. Glass claims, however, that Franklin County lacks a "dog warden" and has instead appointed the Franklin County Sheriff to perform the function of enforcing R.C. Chapter 955, as permitted under R.C. 955.121(A). Glass further argues the state failed to prove there was a two-year written

agreement for such services between the Franklin County Board of Commissioners ("county board of commissioners") and the Franklin County Sheriff as required by R.C. 955.121(A)(1). Glass claims that without a written agreement, "Franklin County has no person currently authorized to give the designation as a dangerous dog." (Appellant's Brief at 9.)

{¶ 16} The gravamen of Glass's claim therefore appears to be that the Franklin County Department of Animal Care and Control is not a "county dog warden" appointed or employed by the county board of commissioners. However, Glass fails to fully articulate or substantiate this argument. At best, it appears Glass's argument is based on the fact that the phrase "dog warden" does not appear in the department's name.

{¶ 17} R.C. 955.12 requires that "[e]xcept as provided in [R.C. 955.121], a board of county commissioners shall appoint or employ a county dog warden and deputies in such number, for such periods of time, and at such compensation as the board considers necessary to enforce [R.C. 955.01 to 955.27] and [R.C. 955.50 to 955.53]." The statute further sets forth the duties of a county dog warden and deputy wardens. At trial, the prosecutor identified Callison by the title of "deputy warden" when calling him as a witness, and Callison did not object to or correct the use of that title. Deputy Warden Callison testified he had been trained to enforced R.C. Chapter 955.

{¶ 18} Accepting Glass's argument requires us to conclude that the county board of commissioners cannot employ a county dog warden or deputy wardens within a department or agency named "animal care and control" because it lacks the term "county dog warden." It is a general rule of statutory interpretation that when interpreting a statute courts must avoid an illogical or absurd result. *Brooks Capital Servs., L.L.C. v. 5151 Trabue Ltd.*, 10th Dist. No. 12AP-30, 2012-Ohio-4539, ¶ 20. Interpreting the mandate of R.C. 955.12 that a board of county commissioners "shall appoint or employ a county dog warden and deputies" to require that the department in which those positions are placed must also be named "county dog warden" would be an absurd result. Thus, we reject Glass's argument that the Franklin County Department of Animal Care and Control, and Deputy Warden Callison as an employee of that department, lacked authority to designate his dog as dangerous.

{¶ 19} Accordingly, we overrule Glass's first assignment of error.[1]

## B. Speedy-trial violation

{¶ 20} Glass argues in his second assignment of error that the trial court erred by denying his motion to dismiss based on a violation of his right to a speedy trial. Glass moved to dismiss at the beginning of the August 1, 2022 trial. The state argued Glass's speedy-trial time had tolled for a reasonable period while the state responded to Glass's discovery request. The trial court denied Glass's motion to dismiss. On appeal, Glass asserts his speedy-trial time should not have been tolled for the state to respond to his request for discovery.

{¶ 21} The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution. *State v. Smith*, 10th Dist. No. 19AP-170, 2021-Ohio-1936, ¶ 38. Ohio law also contains a statutory right to a speedy trial, pursuant to statutes implemented to incorporate the constitutional protections. *State v. Sellers*, 10th Dist. No. 08AP-810, 2009-Ohio-2231, ¶ 9.

{¶ 22} Appellate review of a trial court's decision on a motion to dismiss based on a speedy-trial violation presents a mixed question of law and fact. *State v. Bias*, 10th Dist. No. 21AP-329, 2022-Ohio-4643, ¶ 149. We must give deference to the trial court's findings of fact if they are supported by competent, credible evidence, but independently review whether the trial court properly applied the law to those facts. *Id.*

{¶ 23} Glass was charged with violating R.C. 955.22(C) as an unclassified misdemeanor. An offense not specifically classified is a minor misdemeanor if the only penalty that may be imposed is a fine of no more than $150. R.C. 2901.02(G)(2). A first-offense violation of R.C. 955.22(C) is subject to a fine of $25 to $100. R.C. 955.99(E). Therefore, because Glass was charged with a minor misdemeanor, the state was required to bring him to trial within 30 days after service of summons. R.C. 2945.71(A).

---

[1] Within his first assignment of error, Glass also attempts to argue that the statutes governing designation of a dangerous dog are unconstitutionally vague. "A penal statute is unconstitutionally vague if it 'forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess as to its meaning and differ as to its application.' " *State v. Turner*, 10th Dist. No. 04AP-1166, 2005-Ohio-3143, ¶ 6, quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926). However, Glass does not challenge the statute under which he was convicted; rather, he argues R.C. 955.222 is vague because it fails to clearly set forth who is authorized to designate a dog as dangerous. Thus, Glass does not challenge the statute requiring him to confine or control his dog and fails to set forth a proper constitutional vagueness claim.

{¶ 24} A defendant establishes a prima facie violation of his statutory speedy-trial right by demonstrating that more than the permitted time elapsed before trial. *See State v. Williams*, 10th Dist. No. 18AP-891, 2023-Ohio-1002, ¶ 14. Once a defendant establishes a prima facie case, the state bears the burden of proving that time was sufficiently tolled and the speedy-trial period extended. *Id.* The time to bring a defendant to trial may be extended for reasons set forth in R.C. 2945.72. "Hence, the proper standard of review in speedy trial cases is to simply count the number of days passed, while determining to which party the time is chargeable, as directed in R.C. 2945.72." *State v. Brown*, 10th Dist. No. 19AP-40, 2019-Ohio-4753, ¶ 27. On appeal from a denial of a motion to dismiss for a statutory speedy-trial violation, we independently calculate whether the time to bring defendant to trial expired. *Williams* at ¶ 14.

{¶ 25} A defendant charged with a minor misdemeanor must be brought to trial "within thirty days after the person's arrest or the service of summons." R.C. 2945.71(A). Glass was not arrested on the charge in case No. 71040. Therefore, we must look to service of summons to determine when the speedy-trial period began. Under Crim.R. 4(D)(3), a summons may be personally served on a defendant or mailed to the defendant's last known address by certified or express mail with a return receipt requested. The summons in case No. 71040 was issued on June 3, 2022 and sent by certified mail, with a postmark of June 6, 2022. The record does not contain a return receipt; therefore, it is unclear when Glass received the summons.[2] *See* Crim.R. 4(D)(4) ("When the copy of the summons has been served by mailing it to the defendant's last known address by United States certified or express mail or by a commercial carrier service utilizing any form of delivery requiring a signed receipt, it shall be docketed and returned in the manner prescribed by Civ.R. 4.1(A)(2)."). This court has previously held that "when a person charged with a misdemeanor does not receive service of summons, the first day chargeable to the state is the day of the person's initial appearance before the court." *State v. Pritchard*, 10th Dist.

---

[2] We acknowledge that Glass filed a demand for jury trial and a copy of his demand for discovery in case No. 71040 on June 9, 2022. Those filings indicate Glass was aware of case No. 71040 by June 9th and suggest he may have received the certified mail containing the summons between June 6th and 8th. However, at oral argument on appeal, Glass stated he did not believe he had been served with the summons by June 9th. Thus, it is unclear if Glass ever received the certified mailing containing the summons and, because there is no return receipt for the summons sent by certified mail, the record does not establish that Glass was served with the summons pursuant to Crim.R. 4(D)(3).

No. 12AP-695, 2013-Ohio-1255, ¶ 9. Under the circumstances in this case, where the record does not contain a return receipt for the summons issued by certified mail, we consider Glass's speedy-trial period to have begun on June 22, 2022, when he first appeared and entered a not guilty plea. Forty days elapsed between June 22, 2022 and the trial on August 1, 2022; therefore, Glass established a prima facie violation of his statutory right to a speedy trial.

{¶ 26} Because Glass established a prima facie violation of his right to a speedy trial, the state bears the burden of proving that a sufficient amount of time was tolled and the speedy-trial period extended. *Williams* at ¶ 14. At trial and on appeal, the state argues that the speedy-trial period was tolled from July 19 to August 1, 2022 as a reasonable time for the state to respond to Glass's discovery request. The state asserts that because the speedy-trial period was tolled for those 13 days, Glass was brought to trial within 30 days as required by R.C. 2945.71(A).

{¶ 27} Under R.C. 2945.72(E), the time for bringing a defendant to trial is extended by "[a]ny period of delay necessitated by reason of a * * * motion, proceeding, or action made or instituted by the accused." The time for bringing a defendant to trial may also be extended for "the period of any reasonable continuance granted other than upon the accused's own motion." R.C. 2945.72(H). "A [defendant's] discovery request tolls speedy-trial time for a reasonable amount of time necessary to allow the state to respond to the request." *State v. Belville*, 171 Ohio St.3d 5, 2022-Ohio-3879, ¶ 21. "What is reasonable will necessarily be a case-by-case determination and depend on the totality of the circumstances." *Id.*

{¶ 28} Although Glass claimed he served his demand for discovery on June 9th, the prosecutor asserted he did not receive it and was not aware of it until the July 19th hearing. In requesting a continuance, the prosecutor indicated he could provide discovery to Glass quickly. The record does not reflect when discovery was actually provided to Glass, but Glass had the state's response as of the trial on August 1st, which was 13 days after the July 19th hearing.

{¶ 29} In other cases, where the record was unclear when or if discovery was provided, we have held that a discovery demand tolls speedy-trial time for the time it would reasonably take to respond. *State v. Squillace*, 10th Dist. No. 15AP-958, 2016-Ohio-1038,

¶ 15; *State v. Vrapi*, 10th Dist. No. 11AP-700, 2012-Ohio-1018, ¶ 7. *See also State v. Gonzalez*, 10th Dist. No. 08AP-716, 2009-Ohio-3236, ¶ 23-25 (concluding speedy-trial time tolled for a "reasonable amount of time" when the record did not indicate the state ever responded to the defendant's discovery demand, but remanding to the trial court to determine what constituted a reasonable amount of time under those circumstances). We also have held that local rules of court may be considered when determining a reasonable amount of time to respond to a discovery request. *Brown* at ¶ 31. For example, under Loc.R. 75.03 of the Franklin County Court of Common Pleas, in a criminal case "discovery should be provided in 21 days from the date of receipt of the demand, except in capital cases." Consistent with those principles, in this case we conclude that 13 days was a reasonable time for the state's response to discovery. *See Squillace* at ¶ 15 (concluding 24 days was a reasonable time for the state's discovery response); *Vrapi* at ¶ 7 ("[W]e conclude that the 19 days from the discovery request to the original date of trial was a reasonable tolling period."); *State v. Truitt*, 10th Dist. No. 10AP-473, 2010-Ohio-5972, ¶ 12 ("We cannot say that the 24 days between the arraignment and the next scheduled hearing was an unreasonable time for appellant to respond to the discovery request.").

{¶ 30} Although 40 calendar days passed between June 22, 2022, when Glass made his first appearance in case No. 71040, and the trial date of August 1, 2022, we conclude that 13 of those days were tolled for purposes of calculating the speedy-trial time. Therefore, only 27 days are chargeable against the state, and Glass was brought to trial within the 30-day limit set forth in R.C. 2945.71(A).

{¶ 31} Accordingly, we overrule Glass's second assignment of error.

## C. Incomplete discovery/*Brady* violation

{¶ 32} In his third assignment of error, Glass claims his right to due process was violated because the state failed to provide complete discovery, including police reports, photographs, and body camera and dashboard camera video. Glass alleges those materials would have established that Det. Reed admitted to kicking the dog before he was bitten and that law enforcement agencies previously had identified the dog as a problem and were seeking to have it removed.

{¶ 33} "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to

punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). A defendant claiming a *Brady* violation must demonstrate that: (1) the prosecution failed to disclose evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material. *State v. Vale*, 10th Dist. No. 22AP-537, 2023-Ohio-4287, ¶ 27. Evidence is favorable to the defendant when it is exculpatory or impeaching. *State v. McNeal*, 169 Ohio St.3d 47, 2022-Ohio-2703, ¶ 20. Constitutional error results from suppression of favorable evidence if there is a reasonable probability that the result of the proceeding would have been different if that evidence had been disclosed to the defense. *Id.* The defendant bears the burden of proving a *Brady* violation rising to the level of a denial of due process. *Vale* at ¶ 27.

{¶ 34} Glass's *Brady* claim involves materials that allegedly were not produced in discovery and materials that the state unsuccessfully attempted to produce. We will consider each of these assertions in turn.

{¶ 35} With respect to materials that allegedly were not produced, Glass asserts he was not provided with information about three additional officers that he claims responded to the incident. Glass alleges two of those officers wore body cameras and had dashboard cameras in their vehicles, and that he was not provided with the video from those cameras. However, Glass fails to present any objective evidence to establish that those materials existed.

{¶ 36} When Glass raised the lack of complete discovery prior to trial, the prosecutor advised the trial court that Det. Reed was not wearing a body camera on the day of the incident. Similarly, Deputy Warden Callison testified his department did not require body-worn cameras. In the discussion with the trial court about the lack of complete discovery, Glass claimed that a total of five law enforcement officers (including Det. Reed and Deputy Warden Callison) were present at his home. Despite this claim, Glass failed to elicit any evidence at trial establishing that any officers other than Det. Reed and Deputy Warden Callison were present during or after the incident. Neither Det. Reed nor Deputy Warden Callison testified that any other officers were present, and on cross-examination Glass did not question them about whether any other officers were present. Moreover, when testifying in his own defense, Glass did not assert that any other officers were present at any point. Additionally, Glass claims in his brief on appeal that after trial his neighbors told

him they witnessed a conversation between Det. Reed and other officers in which Det. Reed admitted to having kicked the dog before being bitten. Although Glass now indicates he learned of this information after trial, during trial he alleged "[i]t was stated by some of the neighbors that [Det.] Reed kicked the dog before [being bitten]." (Aug. 1, 2022 Tr. at 70.) However, Glass did not subpoena any of his neighbors as witnesses to substantiate this claim or to establish the presence of other law enforcement officers.

{¶ 37} "A *Brady* violation may not rest upon a claim that is 'purely speculative.' " *State v. Moore*, 10th Dist. No. 11AP-1116, 2013-Ohio-3365, ¶ 43, quoting *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, ¶ 60. *See State v. Black*, 10th Dist. No. 22AP-180, 2022-Ohio-3119, ¶ 20 ("Implicit within the first element of a *Brady* claim is that the evidence allegedly withheld must have actually existed."). Glass fails to establish a *Brady* violation with respect to the information about additional law enforcement officers and body camera or dashboard camera video because he has not presented any objective evidence to establish those materials existed. There was no evidence that Det. Reed or Deputy Warden Callison wore a body camera, and there was no evidence to indicate any other law enforcement officers were present or had body or dashboard cameras. *See Black* at ¶ 21 ("Black cannot establish a *Brady* violation based solely on his unsupported assertion that exculpatory surveillance videos *could have* existed without some evidence to suggest that such videos actually did exist."). (Emphasis sic.)

{¶ 38} With respect to materials that the state unsuccessfully attempted to produce, the record indicates there were photographs taken as part of the investigation. "It is well settled that a defendant is entitled to rely on the prosecution's duty to produce evidence that is favorable to the defense." *State v. Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, ¶ 25. *See State v. Norman*, 10th Dist. No. 12AP-505, 2013-Ohio-1908, ¶ 54 ("The prosecution's duty of disclosure under *Brady* extends to favorable and material evidence that is known to the prosecution and to others acting on the prosecution's behalf in the case."). Immediately before trial commenced, Glass advised the trial court that the electronic copies of the photographs provided to him by the state were blank files. The prosecutor then discovered that his electronic copies of the photographs also were blank, but advised the trial court he did not intend to introduce any photographs into evidence. The court allowed

the trial to proceed without requiring the state to produce copies of the photographs to Glass.

{¶ 39} During his cross-examination of Deputy Warden Callison, Glass suggested the photographs would have established that the dog was wearing an "invisible fence" collar. Assuming for purposes of analysis that the photographs would have established the dog was wearing an "invisible fence" collar, Glass fails to establish a reasonable probability that the outcome of the proceeding would have been different if the photographs had been produced. *See McNeal* at ¶ 20; *see also Norman* at ¶ 55 (holding that *Brady* is violated when undisclosed favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict). As explained below, Glass's conviction was based on failure to control the dog. There was no allegation that the dog left Glass's property and that was not the basis for the conviction. Thus, Glass fails to demonstrate the state's failure to produce the photographs constitutes a *Brady* violation because proving that the dog was wearing an "invisible fence" collar would not have resulted in a different outcome at trial.

## D. Sufficiency of the evidence

{¶ 40} In his fourth assignment of error, Glass asserts the evidence was insufficient to support his conviction and the decision affirming the dangerous dog designation.

{¶ 41} "Sufficiency of the evidence is a legal standard that tests whether the evidence is legally adequate to support a verdict." *State v. Solt*, 10th Dist. No. 22AP-419, 2023-Ohio-2779, ¶ 22, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). When reviewing the sufficiency of the evidence, an appellate court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*, citing *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 34. "A verdict will not be reversed due to insufficient evidence unless, after viewing the evidence in the light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact." *Id.*

{¶ 42} Glass challenges the evidence supporting his conviction and the evidence supporting the trial court's decision to affirm the dangerous dog designation. Because each required proof of different elements, we will consider them in turn.

**1. Conviction for failure to confine or control**

{¶ 43} Glass was convicted of violating R.C. 955.22(C), which provides as follows:

> Except when a dog is lawfully engaged in hunting and accompanied by the owner, keeper, harborer, or handler of the dog, no owner, keeper, or harborer of any dog shall fail at any time to do either of the following:
>
> (1) Keep the dog physically confined or restrained upon the premises of the owner, keeper, or harborer by a leash, tether, adequate fence, supervision, or secure enclosure to prevent escape;
>
> (2) Keep the dog under the reasonable control of some person.

{¶ 44} The statute is phrased in the alternative; therefore, to convict Glass, the state was required to prove beyond a reasonable doubt that Glass was the owner, keeper, harborer, or handler of the dog, that the dog was not lawfully engaged in hunting and accompanied by Glass when the incident occurred, and *either* that Glass failed to keep the dog physically confined or restrained on his premises *or* Glass failed to keep the dog under reasonable control of some person.

{¶ 45} Glass argues there was insufficient evidence to support his conviction because there was no evidence the dog left his property and because it was confined to the property by an "invisible fence." The evidence at trial established the dog bit Det. Reed while he was standing on Glass's front porch. There was no evidence the dog ever left Glass's property. However, Glass's claim that the dog never left the property only relates to R.C. 955.22(C)(1), which requires an owner to keep a dog physically confined or restrained on the owner's premises. The complaint in case No. 71040 specifically alleged the dog was not under reasonable control when it bit Det. Reed. Therefore, the basis for Glass's conviction was R.C. 955.22(C)(2)—i.e., that he failed to keep the dog under reasonable control of some person, and we need not address Glass's arguments regarding proper confinement of the dog.

{¶ 46} Glass argues R.C. 955.22(C)(2) only applies when a dog is taken off the owner's property. He cites no precedent in support of that argument, however, and we find nothing in the statute suggesting that R.C. 955.22(C)(2) would only apply when a dog is off the owner's premises.

{¶ 47} At trial, Det. Reed testified that when he reached Glass's front porch, he heard a door open behind the house and saw the dog come running around the house. The dog first ran to Det. Reed's car, then ran and jumped onto the porch and bit Det. Reed. Det. Reed testified no one was with the dog when he first saw it and that Glass only came out of the house after the dog had bitten him and run away. Det. Reed testified the dog was not hunting at the time of the incident. There was no dispute that Glass owned the dog, and he admitted in his testimony to having purchased it as a guard dog.

{¶ 48} Viewed in the light most favorable to the prosecution, this evidence established the dog was not lawfully engaged in hunting and accompanied by its owner and that it was not under the reasonable control of any person at the time it bit Det. Reed. Therefore, we conclude there was sufficient evidence to support Glass's conviction for violating R.C. 955.22(C). *See State v. Caldwell*, 5th Dist. No. 15 CAC 07 0058, 2016-Ohio-568, ¶ 25-26 (finding sufficient evidence to support conviction where the evidence established that dog ran out of house, through garage, around its owner, and attacked delivery truck driver).

**2. Dangerous dog designation**

{¶ 49} Glass requested a hearing on the dangerous dog determination pursuant to R.C. 955.222(C). The statute provides that "[a]t the hearing, the person who designated the dog as a * * * dangerous dog * * * has the burden of proving, by clear and convincing evidence, that the dog is a * * * dangerous dog." R.C. 955.222(C). "Clear and convincing evidence is that 'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *State v. Foster*, 10th Dist. No. 08AP-523, 2008-Ohio-3525, ¶ 6, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 50} A dangerous dog is one that without provocation has caused injury, other than killing or serious injury, to a person, killed another dog, or been the subject of three or more violations of R.C. 955.22(C). R.C. 955.11(A)(1)(a). " 'Without provocation' means that a dog was not teased, tormented, or abused by a person, or that the dog was not coming to the aid or the defense of a person who was not engaged in illegal or criminal activity and who was not using the dog as a means of carrying out such activity." R.C. 955.11(A)(7).

{¶ 51} Det. Reed testified the dog came out from behind the house after he reached Glass's front porch, but before he knocked on the door. The bite left a hole in Det. Reed's hand and caused bleeding. Deputy Warden Callison observed the wound in Det. Reed's hand after responding to the incident. At trial, Glass argued the dog was protecting his owners, claiming Det. Reed came to the door with a firearm. Glass also argued Det. Reed provoked the dog by kicking it before he was bitten. Det. Reed admitted he was in plain clothes and had a firearm, but testified the firearm was holstered until after the dog bit him. Det. Reed also admitted he kicked the dog but testified that was after he was bitten, in an effort to get the dog off of him. Deputy Warden Callison testified he did not find any indication the dog was provoked.

{¶ 52} Viewing the evidence presented at trial in the light most favorable to the state, we conclude there was sufficient evidence to establish that the dog caused injury to a person and that the dog was not provoked. Therefore, the trial court did not err by affirming the dangerous dog designation.

{¶ 53} Accordingly, we overrule Glass's fourth assignment of error.

**E. Judicial bias**

{¶ 54} In his fifth assignment of error, Glass asserts he was denied a fair trial in violation of his constitutional rights because the municipal court judge was biased.

{¶ 55} If a municipal court judge is alleged to have a bias or prejudice for or against any party to a proceeding pending before the judge, any party to the proceeding may file an affidavit of disqualification with the clerk of the Supreme Court of Ohio. R.C. 2701.031. *See also State v. Rhoades*, 10th Dist. No. 19AP-93, 2020-Ohio-2688, ¶ 22. This is the exclusive means by which a litigant may claim a municipal court judge is biased or prejudiced. *Id.* The clerk of the municipal court is notified when an affidavit of disqualification of a municipal court judge is filed and must enter a notice on the docket of the proceeding. R.C. 2701.03(C)(1)(b) and (c). There is no indication on the docket of either municipal court case that Glass filed an affidavit of disqualification of the municipal court judge with the clerk of the Supreme Court.

{¶ 56} Glass argues that an affidavit of disqualification was not the proper remedy, contending the trial judge was not biased against him individually but rather biased against all defendants. Contrary to Glass's argument, however, R.C. 2701.031 applies not only to

allegations of "bias or prejudice for or against a party to a proceeding before the judge" but also to scenarios where a judge is "otherwise [] disqualified to preside in a proceeding pending before the judge." Litigants in other cases have filed affidavits of disqualification based on similar allegations that judges should be disqualified from entire classes of cases. *See*, *e.g.*, *In re Williams-Byers*, 157 Ohio St.3d 1269, 2019-Ohio-5448 (affidavit seeking to disqualify judge from all criminal and traffic cases in which South Euclid appeared as a party); *In re Burge*, 142 Ohio St.3d 57, 2014-Ohio-5871 (affidavit seeking to disqualify judge from all matters in which county prosecuting attorney or his assistant prosecutors appeared as counsel of record). Thus, to the extent Glass believed the trial judge was biased against all criminal defendants, he could have filed an affidavit of disqualification on that basis. Because Glass did not file an affidavit of disqualification, he has forfeited this issue on appeal. *State v. Castile*, 10th Dist. No. 13AP-10, 2014-Ohio-1918, ¶ 13.

{¶ 57} Accordingly, we overrule Glass's fifth assignment of error.

## IV. Conclusion

{¶ 58} For the foregoing reasons, we overrule Glass's five assignments of error and affirm the judgments of the Franklin County Municipal Court, Environmental Division.

*Judgments affirmed.*

BEATTY BLUNT, P.J., concurs.
JAMISON, J., concurring.

{¶ 1} Because the court ruled that the prosecutor did not have to exchange all discovery, I write separately.

{¶ 2} I take no issue with the recitation of facts; therefore, I adopt them fully. However, I would find that the discovery exchanged was incomplete. It is well-settled law that it is the state's responsibility to make the photos available as it is considered to be in the possession of the state. *State v. Perry*, 80 Ohio App.3d 78, 85 (11th Dist.1992) ("Any discoverable material in the police's possession is considered to be in the possession of the state and must therefore be given to the defendant.").

{¶ 3} In *State v. Parker*, 53 Ohio St.3d 82 (1990), the court reviewed the facts that defense counsel had requested materials used to identify the defendant but had not realized a tape which had been made available on discovery was the basis for an identification. *Id.* at syllabus. "Crim. R. 16(B) does not require the prosecution to disclose to the defendant

the significance to the prosecution of the information sought to be discovered by the defendant. The rule only requires the prosecution to disclose, and to permit the defendant to obtain, the information sought." *Id.* at paragraph one of the syllabus. However, I would find that the exchange of photos would not affect the outcome of the case.

{¶ 4} R.C. 955.22(C) reads in pertinent part:

> Except when a dog is lawfully engaged in hunting and accompanied by the owner, keeper, harborer, or handler of the dog, no owner, keeper, or harborer of any dog shall fail at any time to do either of the following:
>
> (1) Keep the dog physically confined or restrained upon the premises of the owner, keeper, or harborer by a leash, tether, adequate fence, supervision, or secure enclosure to prevent escape;
>
> (2) Keep the dog under the reasonable control of some person.

{¶ 5} Appellant is strictly liable for the dog biting the officer and the photos sought would not have changed the outcome of the case. I find that it is harmless error that the photos were not exchanged.

{¶ 6} I concur with the majority decision. I write to remind the trial court that the state has a burden in the case to obtain all discoverable material and make it available on a demand for discovery.

———————————